WESTINGHOUSE SALARIED EM-
PLOYEES ASSOCIATION AT SOUTH
PHILADELPHIA, and Federation of
Westinghouse Independent Salaried Un-
ions, Plaintiffs,

v.

WESTINGHOUSE ELECTRIC CORPO-
RATION, Defendant.

·Civ. A. No. 62-672.

United States District Court
W. D. Pennsylvania.

May 14, 1963.

Albert C. Shapira, Pittsburgh, Pa., for plaintiffs.

John G. Wayman, and Leonard L. Scheinholtz, of Reed, Smith, Shaw & Mc-Clay, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

In this civil action tried non-jury, plaintiffs seek to compel defendant to arbitrate a dispute between the union and the defendant with respect to the claimed right of the defendant to "sub-contract" or "contract out" work which defendant's regular employees generally perform. The issue involves the interpretation of the bargaining agreement. The evidence introduced at the trial is based largely on admissions from the pleadings, but as supplemented by one witness for the plaintiffs and two for the defendant. The following facts are supported by the evidence and are therefore found.

Plaintiff, Westinghouse Salaried Employees Association at South Philadelphia, hereinafter called the "Association" is a labor organization maintaining its sole office in Prospect Park, Pennsylvania. The Association is affiliated with, and is a member of, the plaintiff Federation of Westinghouse Independent Salaried Unions, hereinafter called the Federation, an unincorporated Federation of labor organizations, having its

office in Pittsburgh, Pennsylvania. The latter is the national organization of Westinghouse Independent Salaried Unions and the Association is the local affiliate.

Defendant, Westinghouse Electric Corporation, hereinafter called the Company, is a Pennsylvania Corporation, engaged in the manufacture and sale of goods in interstate commerce, and has its principal office in Pittsburgh, Pennsylvania.

The Association and the Federation are the duly certified collective bargaining agents for certain salaried employees of the Company at its Lester Plant, Tinicum Township, Delaware County, Pennsylvania, having been so certified as such representative by the National Labor Relations Board. The national agreement was executed October 21, 1960, and the local Association was certified as the bargaining representative by the National Labor Relations Board in February of 1961. This dispute involves the interpretation of the national agreement of October 21, 1961, as the local Association and the defendant have not yet agreed upon a written agreement covering local working conditions at the Lester Plant of the defendant. All employees of the Company at the Lester Plant are engaged in an industry affecting commerce within the meaning of Section 101 of the Labor Management Relations Act, 1947, 29 U.S.C.A. Section 152(7).

On November 1, 1950 the Company and the Federation, acting for and on behalf of and in conjunction with its affiliates entered into a written collective bargaining agreement. This agreement, referred to as the National Contract, covers wages, hours and working conditions of Company employees represented by the Federation and its affiliates at various locations throughout the United States. It has been supplemented and amended on numerous occasions, the most recent being October 21, 1960. As so supplemented and amended it continues in effect until at least October 15, 1963.

In October of 1961 the Association filed two complaints on grievance forms, which it processed through the four steps provided in the grievance procedure of the contract, in which complaints the Association complained of the employer's subcontracting of drafting work to outside firms while employees in the bargaining unit were being reduced in force.

These two complaints were discussed together, both in the Company's replies and in the Association's statements. The Company's answer at the final step reiterated the reasons for contracting drafting work given in prior steps, i. e., to deal with both uncertain and peak load requirements, and pointed out that since no contract provision was involved, these complaints were not "grievances" as that term is defined in Section XV–2–B of the National Contract.

The contract provides for the arbitration of (Contract—Section XV–A–Arbitration):

" * * * any grievance involving action taken or a failure to act subsequent to October 28, 1955, which remains unsettled after the grievance procedure has been exhausted pursuant to Section XV and which involves either

"(1) the interpretation, application or claimed violation of a provision of this Agreement or of a local supplement in effect in the bargaining unit in which the grievance arose, or

"(2) a disciplinary penalty, release or discharge which is alleged to have been imposed without just cause,

* * * upon the written request of either the Federation or the Company."

It further defines a grievance (Contract—Section XV—Settlement of Disputes) to mean:

"(a) any dispute as to the interpretation, application, or claimed violation by the Company of this National Agreement, its supplements or any local supplement covering the bargaining unit involved,

(b) any subject that this National

Agreement provides shall become a grievance, or (c) questions involving discipline, release or discharge of employes in the bargaining unit."

The Federation, on June 1, 1962, requested that the matter be submitted to arbitration under Section XV–A of the National Contract. The Company, on June 8, 1962, declined to submit the matter to arbitration, repeating its prior position, and stating that the matter was not within the scope of the arbitration provisions of the contract.

At the trial counsel for both sides were in agreement that the contract provisions do not expressly refer to contracting out or subcontracting work. In response to the Court's inquiry, Mr. Shapira said: (Trans., p. 8)

"Well, actually, your Honor, you will find that there is no contract provision in this contract that refers to subcontracting out of the work of the bargaining unit, * * *"

Continuing, Mr. Shapira said: (Trans. p. 9)

"Now, My answer to you was that there is no section of the contract here that expressly sets forth that subcontracting is prohibited, and that raises an important question: Does that mean if there is nothing in the contract that says that subcontracting is permitted or prohibited, does that mean that you can arbitrate a dispute concerning a violation of that particular contract?"

As this Court understands it, plaintiffs, nevertheless, contend that under the language of the Contract, Section XV–A—Arbitration, and Section XV—Settlement of Disputes, the disagreement between the parties involves the interpretation, application or claimed violation of the provisions of the agreement, which in turn can be raised under the grievance procedure, and if not settled, then it is to be determined by arbitration.

Because the contract, on its face, does not refer to contracting out or sub-contracting of work, it is believed that it is subject to the ordinary rules which courts use in determining the parties intent as expressed in their agreement. The Supreme Court has said in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1960,

"* * * arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

As trial judge, I therefore permitted evidence to be introduced as to the prior negotiations of the parties in reaching their agreement. These negotiations clearly show that the plaintiffs desired that a provision in the contract be inserted prohibiting contracting out of the drafting work. Defendant refused to agree with plaintiffs as to that provision, and this has been the subject of prior negotiations for several years, but though each side has persisted, they have failed to agree on this issue. Mr. Bollens, National President of the Federation, prior to the execution of the contract of October 21, 1960, submitted a proposal as follows: (Trans. p. 33)

"4. It is the intention of the parties to this agreement that supervisors or others outside the bargaining unit will not perform the work of the employees covered by the bargaining units set forth in the appendix to this agreement."

The defendant declined to acquiesce in the proposal and it was not included in the bargaining agreement. Thereafter, Mr. Bollens, on December 31, 1962, wrote a letter to the Director of Labor Relations for the defendant stating that (Trans. p. 32) "* * * any subcontracting of work * * * without prior negotiation with the affiliate will be considered as a refusal to bargain with us in violation of the National Labor Relations Act, * * *". Another proposal, to add to Section 15, paragraph 2(b), a subclause, (Trans. p. 34), which read

"Any dispute over working conditions" was not agreed to by the defendant and was not inserted in the National Contract.

And finally, in the negotiations with the Association at the Lester Plant on January 17, 1962, the Local submitted a proposal as follows: (Trans. p. 46)

> "Section 6 of their proposal reads, 'Bargaining Unit Work. No one not covered by this agreement will perform work normally performed by employees of the bargaining unit. In cases of emergency, exceptions to this rule may be negotiated.'"

The foregoing proposal has not been agreed to by the defendant.

At this point it is well to note that the instant contract saves to the plaintiffs the right to strike. The language is as follows: (Contract—Section XV–1–B—Settlement of Disputes)

> "The Federation may authorize an Affiliate to strike a bargaining unit in which a grievance arises provided the grievance procedure has been exhausted at the appeal level, a request has been made for arbitration, and the Company and the Federation are unable to reach agreement for arbitration or the Company has notified the Federation that the grievance does not present an arbitrable question * * *"

This Court finds, based upon all of the evidence, that the parties never have agreed upon the issues raised here, that is the parties never have had a meeting of minds, and have, in fact, not agreed that the subcontracting of drafting work is subject to arbitration.

There is thus presented a factual situation which distinguishes the present case from the recent decisions of the Supreme Court and of the Court of Appeals of this Circuit.

The parties have filed extensive briefs discussing their respective positions. In substance, defendant claims that for at least 18 years drafting work has been contracted out by the Company at the Lester Plant to take care of peak loads and rush jobs that the Company was unable to fit into the schedules of its own drafting employees. Defendant stresses the fact that not only does the contract contain no express prohibition or limitation against contracting out work, but the parties negotiated on such a provision in 1960, and were unable to reach an agreement so that the omission was deliberate. Defendant, therefore, claims that the parties did not agree to submit the question of the Company's right to contract out work to arbitration. Finally, the defendant claims that the Court lacks jurisdiction to compel the defendant to arbitrate the dispute since an arbitration award in favor of the plaintiffs would cause the Company to cease doing business with "any other person" constituting an unfair labor practice under Section 8(e) of the Labor Management Relations Act, 1947, as amended.

Plaintiffs concede that in the negotiations the union proposals were not agreed to by the defendant. It concedes also as indicated that there are no specific provisions of the contract relating to subcontracting of work. It nevertheless strongly contends that the authoritative decisions require a judgment of this court that the dispute is subject to arbitration. In support of their position plaintiffs rely heavily upon United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, 1960; United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403, 1960; and International Telephone and Telegraph Corporation v. Local 400, etc., 286 F.2d 329 (C.C.A. 3, 1960), and subsequent cases by the Court of Appeals of this Circuit, as well as other decisions by a number of Courts of Appeal touching upon the general issues raised here. And further, they argue that subcontracting violates the recognition, wage or seniority provisions, or the entire spirit and intent of the collective bargaining agreement.

Many of the decisions that have been referred to contain "no strike" clauses

in the bargaining agreement. The absence of such a clause in the instant bargaining agreement seems to this Court to weigh heavily against plaintiffs' position.

The point then is reached as to what the law is with respect to the issues raised in the instant case, having in mind and emphasizing the facts found.

Both at the trial and in their brief, plaintiffs rely on United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, and argue that it cannot be distinguished in principle from this case.

In the Warrior & Gulf case the union sought to compel arbitration of a grievance based upon the employer's practice of contracting out work while employees who could have performed such work were being laid off. There was no provision of the contract relating to the contracting out of work. A grievance procedure culminating in arbitration was to be followed if differences as to the meaning and application of the provisions of the agreement, or any local trouble of any kind arose. However, the contract also contained "no strike" and "no lockout" provisions. In determining that a proper case for arbitration was presented, the Court, 363 U.S. p. 583, 80 S.Ct. p. 1353, held that when " * * * an absolute no-strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement, for either management is prohibited or limited in the action it takes, or if not, it is protected from interference by strikes." But it should be noticed that the Court had said, 363 U.S. p. 581, 80 S.Ct. p. 1352,

> "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement."

The "no strike" clause in the contract before the Court in Warrior & Gulf is the key to the decision. In the case before me the right to strike saved to the plaintiffs in the bargaining agreement requires a different result than that reached in Warrior & Gulf. It is to be noticed that United Steelworkers of America v. American Manufacturing Co., supra, was decided by the Supreme Court on the same day as the Warrior & Gulf case, and also contains a "no strike" clause in the bargaining contract. A similar clause was likewise in International Telephone and Telegraph Corporation v. Local 400, etc., supra, where Judge Staley held that arbitration was required. In a case that went up from this Court, Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 188 F.Supp. 225, (W.D.Pa., 1959), between the same parties, Judge Sorg held that the grievance which the union sought to arbitrate was one within the terms of the arbitration agreement. His opinion was affirmed by the Court of Appeals, 283 F.2d 93 (C.C.A. 3, 1960). The Supreme Court decision in General Drivers, etc. v. Riss & Company, Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed. 2d 918, decided March 18, 1963, has not been overlooked, but it raised no new element to be considered.

In claiming that a proper case for arbitration is not presented, the Company contends that an award in favor of the plaintiffs would violate Section 8.(e) of the Labor Management Relations Act, 1947, as amended, 29 U.S.C.A. § 158. Defendant argues that an arbitration award preventing it from subcontracting or contracting out work would require it to cease doing business with another person, thus constituting an unfair labor practice. In Section 158(e) Congress has defined any agreement or contract whereby an employer ceases or refrains from doing business with any other person " * * * an unfair labor practice". However, it is to be noticed and emphasized that the statute in Section 160 provides the method and process by which unfair labor practices are prevented. Complaints first go to the National Labor Relations Board and, on review, to the Court of Appeals. The

District Courts have no jurisdiction to determine whether or not activity by an employer or a union is an unfair labor practice. See San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775, 1959, where the Court held:

> "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board * * *."

Under the circumstances, the 8(e) defense raised by the defendant in this case is not a valid one.

And finally, this Court concludes that it has jurisdiction under Section 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185(a). See Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, 1957. Judgment will be directed for the defendant.

This Opinion is regarded as embracing the Findings of Fact and Conclusions of Law.