Teamsters Local Union No. 77, Appellant, *v.* Pennsylvania Turnpike Commission, Appellee.

Argued December 2, 1974, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., ROGERS and BLATT. Judge MENCER did not par-
ticipate.

*Theodore A. Schwartz,* with him *Howard J. Casper,
Mark P. Muller,* and *Casper & Muller, P.C.,* for appellant.

*Jay R. Braderman,* Assistant General Counsel, for ap-
pellee.

OPINION BY PRESIDENT JUDGE BOWMAN, February 5,
1975:

On November 25, 1972, at about 4:30 a.m., an em-
ployee (Ms. X) of the Pennsylvania Turnpike Commis-
sion (appellee) was allegedly observed making love to a

turnpike patron while on duty. The alleged incident occurred inside the tollbooth to which Ms. X was assigned. By letter dated November 29, 1972, Ms. X was informed by appellee's personnel director that her services had been terminated as of the date of her alleged amorous adventure. Pursuant to the provisions of the collective bargaining agreement then extant between her union, Teamsters Local Union No. 77 (appellant), and appellee, Ms. X attempted to have her discharge overturned. Having not been resolved to the satisfaction of Ms. X and appellant, the matter was finally submitted to an arbitrator mutually selected by the parties. By award of the arbitrator dated July 6, 1973, Ms. X was reinstated to her former position, but without the benefit of the wages she would have earned had her discharge not originally taken place.

Appellant, on July 25, 1973, filed a complaint in equity praying this Court to reverse the arbitrator's award insofar as it refused back pay to Ms. X. By Order of this Court dated January 10, 1974, appellee's preliminary objections, in the nature of a demurrer, to the equity complaint were sustained. However, the same Order granted leave to appellant to petition for allowance of appeal under Pa. R.J.A. No. 2101. Appellant filed such a petition on January 24, 1974, and appellee once again responded with preliminary objections. By Order of this Court dated February 7, 1974, these preliminary objections were overruled[1] and the appeal was allowed.

The letter which informed Ms. X of her discharge from employment stated "behavior unbecoming an em-

---

1. These preliminary objections attacked the subject matter jurisdiction of this Court. Appellee has raised this objection once more, both in its brief and in argument. However, having received a prior disposition of this issue, appellee is precluded from having any further consideration of it by this Court. *See Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* Pa. Commonwealth Ct. , 331 A.2d 921 (1975).

ployee" as the reason therefor. In his opinion which accompanied the award reinstating Ms. X, the arbitrator did not consider the question of whether the alleged behavior of Ms. X constituted "just cause" for discharge, as required by Article 8 of the collective bargaining agreement. Ms. X's reinstatement was based upon appellee's failure to provide her with a written "warning notice of the specific complaint" against her (Article 8, Section 2 of the collective bargaining agreement). The question now before this Court is whether, under the terms of the collective bargaining agreement and in light of the circumstances surrounding the discharge and reinstatement, the arbitrator exceeded his power in not awarding back pay to Ms. X in conjunction with her reinstatement.

The United States Supreme Court has expansively defined the role of an arbitrator in a labor dispute in *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960) : "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, *yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.*" (Emphasis added.)

In *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3rd Cir. 1969), the "essence test" enunciated in *United Steelworkers* was explained as follows: "[A]

labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; *only where there is a manifest disregard of the agreement,* totally unsupported by principles of contract construction and the law of the shop, *may a reviewing court disturb the award."* (p. 1128) (Emphasis added.) This Court can find no such "manifest disregard" in the decision of the arbitrator not to award back pay to Ms. X. The collective bargaining agreement is silent as to the subject of back pay upon reinstatement following an improper discharge. Confronted with appellee's failure to give the appropriate "warning notice" as required by the collective bargaining agreement, the arbitrator was, in effect, required to consider the seriousness of this failure in formulating an appropriate remedy.

"Warning notice" appears to have been an improvident title for the writing required of appellee incident to a discharge or other disciplinary action since this writing is more in the nature of a legal complaint than a warning. The "warning notice" is designed to apprise the employee of those specific activities on his or her part which precipitated the discharge or other disciplinary action. The collective bargaining agreement does not obligate appellee to supply the "warning notice" prior to appellee's decision to discharge or otherwise discipline. In fact, under the terms of the agreement, appellee could properly notify the employee of the discharge or other disciplinary action concurrently with or even antecedent to the sending of the "warning notice." In effect, this reduces appellee's procedural faux pas to its use of "behavior unbecoming an employee" in its letter terminating Ms. X's services, rather than "making love with a truck driver, while on duty," or other more precise language. In weighing the seriousness of appellee's error

and comparing it to Ms. X's alleged activities, the arbitrator apparently concluded that, despite the justification for reinstatement, appellee's failure to provide a "warning notice" did not present compelling reasons for allowing Ms. X her back pay. This decision, particularly in light of the seemingly sufficient grounds for discharging Ms. X, did not result from "manifest disregard" of the collective bargaining agreement, and was thus properly within the scope of the permissible exercise of power by an arbitrator of a labor dispute.

Award affirmed.