County of Allegheny, Appellant, *v.* Allegheny County Prison Employees Independent Union, Appellee.

Argued May 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Henry W. Ewalt,* Assistant County Solicitor, with him *Stephen A. Zappala,* County Solicitor, for appellant.

*Frank P. G. Intrieri,* with him *Joseph J. Pass, Jr.,* and *Jubelirer, McKay, Pass & Intrieri,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, July 9, 1975:

For the past eight years, the policy of the County of Allegheny (appellant) regarding the luncheon practice of the prison guards at the Allegheny County Jail has been consistently inconsistent. Prior to 1967, apparently there existed no such policy. In May of 1967, the warden issued a directive which forbade the guards from bringing home-prepared lunches to work. The guards then initiated a grievance procedure, and the matter pro-

gressed to arbitration.[1] A panel of arbitrators rejected the guards' demand for a return to the pre-1967 "policy," but the panel did recommend "that items of food customarily on hand [in the prison kitchen] . . . be made available [to the guards] in lieu of the regularly scheduled meal." Appellant began implementation of this recommendation, and later established an Officers' Lounge as an alternative facility to the kitchen, for the taking of the guards' meals. However, unlike the situation in the kitchen, no supervisory personnel was assigned to oversee the behavior of the prison residents operating the Lounge. On December 28, 1970, the lunchen procedure was once again changed by direction of the wardden. Contrary to the 1967 arbitration recommendation, the guards were no longer permitted to choose whatever food was available in the prison kitchen; their selection was thenceforth limited to items appearing on the prison's daily menu.

In 1971, subsequent to the enactment of the Public Employe Relations Act,[2] and under the authority provided thereby, the Allegheny County Prison Employees Independent Union (appellee) was certified as the official bargaining representative for a unit comprised of all the prison guards. A collective bargaining agreement (Agreement) was then entered into by the parties for the period May 1, 1972 through April 30, 1973.[3] Thereafter, and pursuant to Article III of the Agreement,

---

1. The authority for this grievance procedure lay within the prescriptions of the now repealed Act of June 30, 1947, P. L. 1183, *as amended*, 43 P.S. §215.1 et seq.

2. Act of July 23, 1970, P. L. 563, *as amended*, 43 P.S. §1101.101 et seq.

3. Subsequent to the expiration of the original, a second collective bargaining agreement was adopted (effective August 2, 1973 through April 30, 1976). However, this dispute having arisen out of the original, only its terms and conditions will be considered by this Court.

appellee commenced grievance proceedings, demanding that the guards have access to any available food, and the assignment of special personnel to supervise prison resident behavior in the Officers' Lounge. Prior to arbitration, appellant gradually reinstituted the policy of permitting the guards to select whatever food was available in the prison kitchen. Appellee nevertheless continued prosecution of its grievance, eventually attaining "Level Four" of the grievance procedure, prescribed in Article III, Section 4D of the Agreement. By so continuing, appellee sought to establish as a matter of right *under the terms of the Agreement* that the guards were entitled to any food available and to special protection while dining.

The arbitrator agreed with appellee and interpreted the Agreement as allowing the guards access to any food available and also decided that the guards were entitled to the protection of a supervisory guard when the Officers' Lounge was in use. Appellant simultaneously appealed this award both to the Court of Common Pleas of Allegheny County and to this Court. The latter appeal arose by petition pursuant to Pa. R.J.A. No. 2101. By Order of this Court, the petition was granted. Thereafter, we ordered that the proceedings before the Court of Common Pleas be vacated, and that review of the arbitrator's award proceed before this Court.[4]

We recently had the opportunity to consider a court's scope of review of an award granted by the arbitrator of a labor dispute. *See Teamsters Local 77 v. Pennsylvania Turnpike Commission,* 17 Pa. Commonwealth Ct. 238, 331 A.2d 588 (1975). In that decision, we

---

4. Appellant, despite its precautionary appeal to this Court, asserts that review properly lies in the Court of Common Pleas. This jurisdictional question has previously been resolved contrary to appellant's position. *See Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 17 Pa. Commonwealth Ct. 231, 331 A. 2d 921 (1975).

adopted the "essence test" which had been previously enunciated by the federal judiciary.

> "[O]nly where there is a *manifest disregard* of the [collective bargaining] agreement . . . may a reviewing court disturb the award."[5] (Emphasis added.)

Appellant contends that there was, in fact, such "manifest disregard" in the formulation of the award. We agree.

The Agreement defines a "grievance" as "[a]n alleged breach or violation of this Agreement or a dispute arising out of the interpretation or application of the provisions of this Agreement." (Article III 1A.) While, arguably, this dispute may be said to arise "out of . . . the provisions" of the Agreement, in that the arbitrator concluded that the arbitration recommendation of 1967 became implicitly incorporated in the subsequent Agreement, we believe that such a nebulous incorporation by reference contradicts the express language of the Agreement.

> "[A]ny matter reserved to the discretion of the County . . . by the terms of this Agreement is not a grievance and will not be construed as a grievance."[6]

Simply stated, the particular aspects of the guard's luncheon procedure which are at issue here are not properly within the context of a "grievance" as contemplated by the Agreement. The Agreement's sole reference to Luncheon practice relates to scheduling. (Article VIII 4.) All other facets of such practice, incuding the availability of food and the assignment of supervisory personnel, must be deemed to be within "the discretion of the County" and, thus, beyond the scope of arbitrable grievances.

---

5. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir. 1969).

6. Article III 2A.

"The County retains and reserves unto itself all powers, rights, authority, duties and responsibilities including . . . *all matters not covered by this Agreement.*[7] (Emphasis added.)

If there did, in fact, exist a past policy regarding luncheon procedure, it was a policy of constant change. Being aware of the ever-varying nature of appellant's practice towards guards' luncheons, to escape the application of Article III 2A and Article XXII of the Agreement, it was incumbent upon appellee to have negotiated and explicitly reached an agreement upon this particular condition of employment. Not having done so, appellee cannot now place its reliance upon an unenforceable arbitration "recommendation" of 1967 and an unrelated reference to luncheon scheduling covered in the Agreement. In reaching a contrary conclusion on the flimsy structure of a past practice which did not exist, the arbitrator acted in manifest disregard of the Agreement.

Award set aside.

---

7. Article XXII of the Agreement.