County of Franklin, Pennsylvania, Petitioner, *v.*
American Federation of State, County and Munici-
pal Employees, Respondent.

Argued September 8, 1975, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Jay R. Braderman,* for appellant.

*Neal Goldstein,* with him *Richard Kirschner,* and
*Markowitz & Kirschner,* for appellee.

OPINION BY JUDGE BLATT, October 20, 1975:

The County of Franklin (County) invokes here the appellate review conferred upon this Court by virtue of Pa. R.J.A. No. 2101(a) and seeks reversal of an arbitrator's award under a collective bargaining agreement.

There was no record of the testimony taken before the arbitrator and, as a result, our review is made very difficult. It does appear, however, that the essential facts as related in the arbitrator's opinion and in the briefs submitted before us are virtually uncontested and that Dale L. Shoop was employed by the County for about five years as a part-time guard at the Franklin County Prison until January 1, 1974. From that date until March 18, 1974, he worked as a full-time guard. On the latter date he was advised that his hours were being reduced so that he would be relegated again to part-time duty as of March 25, 1974. As a result, on March 27, 1974, Shoop filed a grievance arguing therein that the reduction of his status violated his rights under the collective bargaining agreement which had been negotiated between the County and the American Federation of State, County and Municipal Employees (AFSCME). Eventually this grievance was submitted to arbitration pursuant to Article XX of the collective bargaining agreement and Section 903 of the Public Employe Relations Act,[1] and the arbitrator decided that Shoop should be regarded as a full-time employee as of March 25, 1974 and that consequently he should be entitled to the difference between his part-time earnings since that date and what he would have earned if he had been continued in a full-time capacity. The County subsequently filed a petition for allowance of an appeal with this Court, which petition we granted. AFSCME then filed a motion to quash which was argued at the same time as the argument on the merits.

---

1. Act of July 23, 1970, P. L. 563, 43 P. S. §1101.903.

The basic argument in support of the motion to quash is that consideration of this appeal is beyond our scope of review. In two recent cases, *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 20 Pa. Commonwealth Ct. 173, 341 A.2d 578 (1975) and *Teamsters Local Union No. 77 v. Pennsylvania Turnpike Commission,* 17 Pa. Commonwealth Ct. 238, 331 A.2d 588 (1975), we followed federal case law which establishes the standard of judicial review as to the award of an arbitrator who is commissioned to interpret a collective bargaining agreement. The United States Supreme Court has held that "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U. S. 593, 597 (1960). A Circuit Court of Appeals has further held that "a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3rd Cir. 1969). Our consideration of the County's appeal here, therefore, is undertaken within the scope of review described in these cases, and it leads us to the conclusion that the award here must be reversed.

This controversy centers upon whether or not Shoop's employment experience entitles him to the same degree of tenure afforded to those who have completed their period of probationary status under Article VI of the

collective bargaining agreement. That Article provides in part:

"New employees shall be regarded as probationary employees for the first ninety (90) days of their employment and shall not be entitled to seniority during that period. Upon completion of this period of ninety (90) days, the seniority of such employees, if retained, shall be effective as of the date of their hire."

The arbitrator apparently reasoned that because of Shoop's prior part-time work experience he was not a "new employee" within the meaning of this Article when he began full-time employment on January 1, 1974. The arbitrator thereupon concluded that Shoop was not bound by the ninety-day service requirement to qualify him for permanent status but that Shoop's "total service," presumably including his part-time experience, entitled him to the permanence which he seeks. There is nothing in the contract, however, to support such a conclusion.

Article VI of this contract must be understood in the light of Article I.B.3. where "employees" are defined as:

"[A]ll *permanently full-time* employees under the jurisdiction of the County excluding the following:

"1. Persons employed for the summer or other seasonal periods.

"2. Persons employed for short and ascertainable periods such as the dog license rush in the Treasurer's Office and court sessions.

"3. Regularly scheduled part-time employees working less than 20 hours per week.

"4. Persons paid on a per diem basis who are replacing a bargaining unit employee who is absent due to illness or other approved leave and who is reasonably expected to return." (Emphasis added.)

A part-time worker is obviously not considered to be an "employee" within the meaning of the contract, and Shoop, therefore, could not have been an "employee" until January 1, 1974. At that time, when he began full-

time work, he then became a "new employee," subject to the conditions of probationary status. Having failed to accumulate the ninety (90) days of service thereafter, which was necessary to advance beyond that status, he did not acquire permanent tenure, and his return to part-time status was clearly justifiable under the contract.

The award of the arbitrator is, therefore, set aside.

