South Allegheny School District, Appellant *v.* South Allegheny Education Association, Appellee.

Argued May 5, 1976, before President Judge Bow-
MAN and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS and BLATT. Judge KRAMER did not par-
ticipate.

*John A. Caputo,* with him *O'Donnell, Bresnahan,
Caputo & Capristo,* and *Gay Banes,* for appellant.

*Daniel R. Delaney,* with him *Ronald N. Watzman,*
for appellee.

OPINION BY JUDGE ROGERS, June 23, 1976:

This is an appeal from an arbitrator's award which
sustained a grievance and granted compensation to
members of the South Allegheny Education Associa-
tion (teachers) who reported for work with the South
Allegheny School District (district) on a day on which
school had to be cancelled because of inclement weath-
er. We affirm.

Our scope of review of an arbitrator's award is
limited and an award will be affirmed so long as it

draws its essence from the collective bargaining agreement, that is, so long as the award "can in any rational way be derived from the ageement, viewed in the light of its language, its context and any other indicia of the parties' intention; only where there is manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." *County of Franklin v. American Federation of State, County and Municipal Employees*, 21 Pa. Commonwealth Ct. 379, 381, 346 A.2d 845, 847 (1975), quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3rd Cir. 1969). *See also County of Allegheny v. Allegheny County Prison Employees Independent Union*, 20 Pa. Commonwealth Ct. 173, 341 A.2d 578 (1975), and *Teamsters Local Union No. 77 v. Pennsylvania Turnpike Commission*, 17 Pa. Commonwealth Ct. 238, 331 A.2d 588 (1975).

We gather from the arbitrator's decision and the parties' briefs that on the morning of February 12, 1975, there was a snowstorm in the Pittsburgh area. At approximately 6:06 A.M. the school superintendent of the South Allegheny School District issued an announcement over a local radio station that school opening would be delayed for two hours.[1] At 8:05 A.M. the superintendent's announcement that schools would be closed for the entire day was broadcast.

The arbitrator's opinion states that a "Memo No. 25" from the district provides that, when starting times of classes are delayed, "[a]ll professional and nonprofessional employees will report for work as soon as possible." It also states: "When you are requested to report for work as soon as possible, we

---

[1] Regular starting time in district was 7:45 A.M. for the high school, 8:00 A.M. for the junior high school, and 8:15 A.M. for the elementary schools.

simply mean that every effected (sic) employee should make an honest effort (sic) to report to his station as close to the scheduled time as possible without jeopardizing his welfare or safety."

Before the 8:05 A.M. announcement that schools would be closed, 101 of 172 teachers reported for duty prepared to teach. The remainder did not appear. It is unclear how long those who reported remained at the schools and, apparently, those students who arrived were sent home. A make-up day was scheduled for March 31, 1975, as a revision to the school calendar, and the teachers filed a grievance seeking an additional day's pay for those who reported for work on February 12. The grievance procedure resulted in an award for the teachers.

Section 602 of the contract between the teachers and the district provides: "The school work year for employees shall not exceed one hundred eighty-five (185) days, comprising one hundred eighty-three (183) teaching days, and one (1) orientation day, and one (1) in-service day. The work year may exceed the school calendar."

We must assume because there is no argument made to the contrary that by working on the make-up day the 101 teachers who appeared for work on February 12 would have worked a total of one hundred eighty-six days.

A "grievance" is defined under the contract as "[a] complaint by a teacher or teachers regarding the meaning, interpretation or application of any provision of this Agreement, or one affecting wages, hours or conditions of employment." The contract also provides: "A 'grievance' as defined herein, shall not apply to any matter in which the Bargaining Unit is without authority to act." Another section of the contract provides: "The Board retains the sole right to adopt the school calendar."

As a grievance affecting wages, and not as a challenge to the district's right to change the calendar, this action was properly before the arbitrator. Given our narrow scope of review, the fact that no record is made before the arbitrator, and that the decision of the arbitrator neither manifestly disregards the agreement nor is it totally unsupported by the principles of contract construction and the law of the shop, we must affirm the award.