## Northampton Area Board of Education, Appellant *v.* David Zehner and Northampton Area Education Association, Appellees.

Argued April 8, 1976, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Frank H. Gelman,* with him *Leon I. Mesirov, Marc S. Cornblatt,* and *Mesirov, Gelman, Jaffe & Cramer,* for appellant.

*Joseph L. Rosenfeld,* with him *Richard H. Pepper,* for appellee.

OPINION BY JUDGE BLATT, July 6, 1976:

On September 5, 1974, the Northampton Area Board of Education (School Board) and the Northampton Area Education Association (Association) entered into a collective bargaining agreement providing that the "school year will be 188 total days for members of the bargaining unit, 184 shall be teaching days and 4 shall be snow days." During the school year 1974-1975, while the agreement was in effect, the School Board scheduled a total of 188 days, but classes were dismissed because of snow on only one day. On two other days, special holidays were granted, so that teachers of the Association were actually in service 185 days.[1] In a grievance filed pursuant to the collective bargaining agreement, David Zehner, a teacher representing the members of the Association, claimed that the School Board failed to provide a total of 4 non-working snow days during the 1974-1975 school year thereby requiring him to work one teaching day beyond the 184 agreed upon. His grievance was submitted to an arbitrator who concluded that, under the bargaining agreement, the School Board could not require teachers to perform more than 184 teaching days of service, and awarded the grievant an extra day of pay. The School Board filed an appeal with this Court pursuant to Pa. R.J.A. No. 2101.

The sole matter before us, of course, concerns the arbitrator's interpretation of the calendar provision in the collective bargaining agreement, and our review is limited to a determination of whether or not his award draws its essence from the agreement

---

[1] It is apparent from the arbitrator's award that he interpreted the contractual term "teaching days" to mean the number of days the teachers were engaged in rendering services to the School Board including both instructional and noninstructional working time. Here the teachers rendered 181 days of instructional services and 4 days of noninstructional services.

and can be rationally derived therefrom. Only when there is a manifest disregard of the agreement may we disturb the award. *In the Matter of Arbitration Between Ringgold Area School District Donora Senior High School and Ringgold Education Association,* 24 Pa. Commonwealth Ct. 266, 356 A.2d 842 (1976); *County of Franklin v. American Federation of State, County and Municipal Employees,* 21 Pa. Commonwealth Ct. 379, 346 A.2d 845 (1975).

Here the arbitrator examined past practices of the School Board and found that no teacher was customarily required to work for more than 184 days so that, when less than the 4 normally scheduled snow days were used for inclement weather, teachers were granted extra holidays in lieu of unused snow days. And it must be remembered, of course, that such past practices, as part of the so-called common law of the shop, are relevant considerations in the interpretation of collective bargaining agreements. *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574 (1960). Under such past practices, then, the arbitrator concluded that the school year included a total of 4 nonservice "snow days" and no more than 184 "teaching days" of service, and his interpretation of the existing agreement clearly conformed to these past practices.

The School Board insists that the arbitrator's award reaches an irrational result in that the collective bargaining agreement would thus be held to give teachers extra pay for days not worked. In other words, the School Board believes the result would be to entitle teachers to be given extra holidays simply because it does not happen to snow on "teaching days".[2] This characterization, however, does not

---

[2] The Board did in fact grant the teachers two extra holidays because it "did not snow" for a total of 4 days during the 1974-1975 school year. Its action, however, still left one unused snow day.

withstand analysis. Under Article XI of the Collective Bargaining Agreement, a school year will have a total of 188 days. Of these, the agreement provides that "184 shall be teaching days" and "4 shall be snow days". The language of the agreement is obviously mandatory. As the arbitrator viewed it, the reference to 188 total days meant only that "the Board will attempt to complete the School Year within this period of time" and that the 4 snow days provided the flexibility necessary to enable the schools to finish the year on the scheduled closing date. His ruling established that the 184 day provision must be read so as not to require the teachers to work more than 184 days, and, because the grievant teacher here worked 185 days, *the arbitrator awarded extra pay for an extra day worked.* This was *not* extra pay for a day "not worked" as the School Board claims. We believe that the arbitrator's interpretation of the contract in this manner is rationally derived from the provisions of the agreement in question, and, as the arbitrator found, it also conforms with the common law of the shop.

The remaining issue before us is whether or not the arbitrator possessed authority to grant the grievant teacher and his associates an additional day's pay, and the collective bargaining agreement by itself is silent as to the type of relief which the arbitrator may order. The Public School Code of 1949[3] (Code) provides the minimum salary levels at which teachers must be paid and, of course, individual salaries must be fixed by individual contracts. The School Board argues that the Code does not permit teachers to be paid compensation in excess of the annual salaries fixed in their contracts, and it is clear, of course, that

---

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §1-101 et seq.

school districts cannot expend funds in any manner or for any purpose not provided in the Code. *Barth v. Philadelphia School District*, 393 Pa. 557, 143 A.2d 909 (1958). We observe, however, that the section of the Code which deals with compensation in excess of the salary schedule stated therein, provides that: "In addition to the salaries provided for by this act, the board of directors of each school district is hereby authorized to grant temporary or emergency increases in salaries to members of its teaching or supervisory staff for any period, and to discontinue such increases at the end of the period for which the same were granted, any law to the contrary notwithstanding." Section 1152 of the Code, 24 P.S. §11-1152. The extra pay awarded by the arbitrator here would not seem to be inconsistent with this provision, and it may well have been the only reasonable remedy available to rectify the contract violation which the arbitrator found on the part of the School Board.

We, therefore, issue the following

ORDER

AND Now, this 6th day of July, 1976, the award of the arbitrator dated October 30, 1975 is hereby affirmed.

Judge KRAMER did not participate in the decision in this case.