## Morrisville Borough Police Association v. Morrisville Mayor and Town Council

*Charles J. Conturso,* for plaintiff.
*Curtin & Heefner,* for defendant.

MONROE, *P. J.,* July 5, 1977—On October 10, 1972, the Borough of Morrisville entered into a contract, effective January 1, 1973, for a term of three years thereafter, with the Morrisville borough police association, bargaining agent of the police of Morrisville borough, in the nature of a collective bargaining agreement for the benefit of the police, governing compensation, hours of work and overtime, clothing and equipment, holidays, vacations, sick leave and hospitalization, and other matters. With reference to the present proceeding, it provided: "3. *COMPENSATION FOR COURT APPEARANCE.* POLICE shall be paid for all appearances in Court, at other than regularly scheduled duty hours, at the rate of $20.00 per day."

After January 1, 1973, the borough paid to its police officers who appeared as witnesses, during other than regularly scheduled duty hours, in the courts of record of Bucks County at Doylestown, the sum of $20 per day for each such appearance and permitted the police officers to retain the witness at any time, in addition to the compensation paid to them as part of the costs in the various

cases in which they appeared as witnesses. There is no dispute about this procedure. However, the borough has consistently refused to pay to any of the police officers compensation in any amount for appearing before a justice of the peace as a witness at any time, in addition to the compensation to which he may have been lawfully entitled as a witness in the particular proceeding wherein he appeared. This has generated the dispute between the parties, the police claiming that the quoted provision of the contract entitled them to compensation from the borough in the amount of $20 for each appearance before a justice of the peace at other than during regularly scheduled duty hours in addition to the compensation or fees to which they might be entitled as a witness, the borough standing firm on the proposition that the provision applied only to appearances before courts of record. Recognizing that the key to the dispute is the interpretation to be given to the provision of the contract and, more specifically, to the word "court" therein, in order to avoid a multiplicity of suits the police, acting through their association, plaintiff herein, instituted this proceeding by filing a petition for declaratory judgment on September 9, 1974, while the contract was still in effect. The borough then filed an answer thereto with new matter to which the police association filed a reply. Thereafter, several conferences were held between the court and counsel for the respective parties and, the issue not having come on for hearing until after the date of the expiration of the contract, it was agreed that the case should thereafter proceed as an action in assumpsit and be tried before the undersigned judge sitting without a jury.

When the case came on for trial, September 28, 1976, the attorney for plaintiff took the position

that the contract was clear, did not require testimony, and requested the court to determine the issue on a reading of the contract. The motion was overruled. The trial judge, being of the opinion that the word "court", as contained in paragraph three of the contract, is ambiguous, proceeded to receive evidence of prior practices of the borough and police with respect to compensation for court appearances of police officers, the negotiations of the parties leading up to the execution of the contract, and the interpretation which the respective parties had placed upon the contract after January 1, 1973, which has been related above, i.e., that the borough refused to pay compensation for appearances of its police before justices of the peace but paid at the rate of $20 for appearances in the courts of record at Doylestown, Bucks County. The trial judge found that there was no meeting of the minds of the parties with respect to compensation to be awarded to police officers by the borough for their appearances before justices of the peace. He entered a verdict in favor of defendants, the mayor and town council of the borough of Morrisville.

The police association filed timely exceptions to the verdict alleging that the trial judge erred in overruling plaintiff's objection to the taking of testimony and receipt of evidence to aid in construction of paragraph three of the contract, in receiving evidence of the negotiations between the parties other than the exhibits D-1 and P-3, in not resolving ambiguity in the terms of the contract against defendant, the preparer of the contract, in sustaining an objection to an offer of proof by the borough concerning a grievance procedure which was supposed to have been adopted by the parties at the time of the execution of the agreement dated October 10, 1972, and upon the grounds that the

evidence was insufficient to support the verdict, and that the verdict was against the weight of the evidence and the weight of the law.

Our Commonwealth Court in Cameron et al. v. Board of Adjustment of the City of Greensburg et al., 1 Pa. Commonwealth Ct. 210, 274 A.2d 258 (1971), at 215 said: "Essentially the courts have held that the word 'court' can mean different things at different times depending upon the context in which it is used. The meaning of the word depends upon the circumstances and its statutory environment. Chief Justice Kephart has appropriately said 'the nature and character of the statutory power and the practice under the common law and related statutes must control the interpretation of the word 'court'. Commonwealth v. Shawell, 325 Pa. 497, 191 A. 17 (1937)."

We take judicial notice that the borough of Morrisville is situated approximately twenty miles distant from the county courts at Doylestown; there is a justice of peace court in the borough of Morrisville, readily accessible to members of the police force of that borough within a very few minutes travel time as compared to the travel time to and from the courts at Doylestown; that the attendance of a witness from the borough of Morrisville, or like distances from Doylestown, including travel time to and from the latter courts, consumes in most instances at least one half a day and on many occasions a day or more. We note that the contractual provision provides for the payment of a flat sum of $20 by the borough to the police officers for their off-duty appearances "in court" raising puzzlement as to whether the parties intended that the compensation for such appearances should be the same whether the appearance would be in Morrisville or nearby justice of the peace

court or at the courts of record in Doylestown, which would in most cases involve more of the officer's free time at greater inconvenience. We take judicial notice that police officers, as a result of their duties are frequently called upon to appear as witnesses in the courts of original jurisdiction as well as in the courts of record.

"A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon a proper construction." 8 P. L. E. 183, §146.

We are satisfied that there is ambiguity in section 3 of the contract as to whether its wording would obligate the borough to compensate its policemen for appearances only at the courts of record in Doylestown or justice of the peace courts in Morrisville or its vicinity as well.

To assist him in the interpretation of paragraph three of the contract, it was proper for the trial judge to have received evidence of the practices of the parties with respect to the compensation of police for attendance at courts of record and courts of original jurisdiction prior to the execution of the contract, of the negotiations between the parties leading up to the drafting and execution of the contract, and the interpretation which the negotitators for the respective parties placed upon the wording thereof, and the conduct of the parties

following the effective date of the contract with respect to compensation of the police for attending courts of record and courts of original jurisdiction. See Northampton Area Board of Education v. Zehner, 25 Pa. Commonwealth Ct. 401, 360 A.2d 793 (1976); Trapuzzano v. Lorish, 467 Pa. 27, 354 A.2d 534 (1976); Salaried Employees Association at South Philadelphia v. Westinghouse Electric Corporation, 217 F. Supp. 622 (D.W.D. Pa. 1963); Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1130 (3d Cir. 1969); Shipley et al. v. Pittsburgh & L. E. R. Co., 83 F. Supp. 722 (D.W.D. Pa. 1949); Consolidated Tile and Slate Co. v. Fox, 410 Pa. 336, 189 A.2d 228 (1963); Edwin J. Schoettle Co. Appeal, 390 Pa. 365, 134 A.2d 908 (1957); Chaplin v. Griffin, 252 Pa. 271, 97 Atl. 409 (1916); Reading Tube Corp. v. Steel Workers Federation et al., 173 Pa. Superior Ct. 274, 98 A.2d 472 (1953); United Steelworkers of America v. American Manufacturing Co., 363 U. S. 567, 570, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); Celley v. Mutual Benefit Health and Accident Association, 229 Pa. Superior Ct. 475, 324 A.2d 430 (1974).

It is implicit in the testimony that the members of the borough council of the borough of Morrisville were aware that the police officers of that borough, when called upon to testify as witnesses, appeared almost in every instance in either the justice of the peace court in the borough of Morrisville or in the county courts at Doylestown and only occasionally in the courts of other jurisdictions. The evidence before the trial judge establishes that prior to January 1, 1973, as compensation additional to the statutory witness fees and mileage to which police officers were legally entitled for appearing as witnesses in justice of the

peace courts and the county courts, the borough council paid each officer appearing as a witness in the county courts at times other than during his assigned duty hours the sum of $10 a day for each such appearance and permitted the officer to retain the statutory witness fee and mileage paid to him in each case but the borough paid nothing to any officer for appearing before any justice of the peace as a witness.

In contemplation of a collective bargaining contract between the borough and the borough police, and the negotiation of the same, the borough council appointed a committee for that purpose and the police selected the Morrisville borough police association, which in turn, selected a negotiating committee for the same purpose. The respective negotiation committees met at least three times during the year 1972 for the purpose of arriving at a contract which would be effective through the years 1973, 1974 and 1975. One meeting was on July 27, 1972, another in the latter part of August in 1972 and the third on September 27, 1972.

Sometime prior to the July meeting, the attorney for the police directed a letter dated June 22, 1972, to the Morrisville borough mayor and president of council submitting the police proposal for the collective bargaining agreement, including therein the following: "(c) Compensation for Court Appearance. Police shall be paid for all appearances Court at other than regularly scheduled duty hours at the overtime rate. They shall be paid four hours for an appearance on a regularly scheduled day off at a District Court and eight hours pay for an appearance at a Court of record."

The same letter proposed that the overtime rate be "one and one-half (1.5) times the hourly rate

plus the longevity increment." At the July meeting, the same proposal was submitted by the police to the borough representatives. If the proposal had been accepted it would have meant a police officer would have been paid for an appearance at a court of record, when not on duty, for a full eight hours at time and a half which would amount to $54 and that for a justice of peace appearance, when not on duty, he would be paid for four hours at time and a half, amounting to $27. The proposal was rejected by the borough representatives, the police describing it as having been "rejected out of hand." Thereafter, the borough representatives refused to discuss any compensation involving that for appearance before a justice of the peace and the police representatives refused to discuss any compensation which excluded that for appearance before a justice of the peace; and the evidence establishes that thereafter when the word "court" was used, it was used without specificity as to whether it referred to a justice of the peace court, a court of record, or both, although the distinction was clearly made in the Exhibit P-1 as above quoted.

On September 7, 1972, counsel for the borough wrote to counsel for the police stating that the borough council had met and reviewed the proposal and counter-proposal in the negotiations and "Enclosed herein is a draft of what Borough Council is willing to offer to the Morrisville Police. Council feels very strongly about this offer and, it is my feeling, that very little change, if any, would be agreed to by them." (P-3) Accompanying that letter was the proposal, dated September 6, 1972 (D-1), stating:

"1. (c) *Compensation for Court Appearance.* Police shall be paid for all appearances in court, at

other than regularly scheduled duty hours, at the rate of $12.00 per day." Finally, on September 27, 1972, the attorney for the borough submitted to the attorney for the police a proposal containing the following:

"*Compensation for Court Appearance.* Police shall be paid for all appearances in court, at other than regularly scheduled duty hours, at the rate of $20.00 a day." This was presented to the police negotiating team at the negotiation meeting between the parties on September 27, 1972. The police group caucassed and then returned to the meeting and stated that they accepted the proposal. Thereafter, the collective bargaining contract was drafted by the borough attorney and was executed.

It is apparent from the testimony that after the July negotiating meeting, at which the borough representatives had made known their refusal to consider compensation for police attendance at justice of the peace proceedings and the police had made known their refusal to consider any proposals which did not involve compensation for appearance in justice of the peace courts as well as in courts of record, "the wish became father to the thought(s)" of each side and that when the borough representatives and their attorney used the words "court" in proposing compensation they had in mind only courts of record and that when the representatives of the police and their attorney used the same word they had in mind both courts of record and justice of the peace courts. This is borne out by the subsequent conduct of the parties because after the effective date of the contract the police submitted statements for compensation for appearances in justice of the peace courts as well

courts of record but the borough refused compensation for appearances at justice of the peace courts but paid for appearances in the courts of record. We are satisfied, as was the trial judge, that there was no mutual understanding or meeting of the minds of the parties with respect to compensation of the borough police for attendance at proceedings in justice of the peace courts.

The attorney for the police has argued to us that the trial judge should have construed the contract and the term "court" against the borough because the borough attorney had prepared the same and, therefore, should not have considered evidence with respect to the prior practices of the parties, the negotiations and the interpretations which each party put upon the contract after its execution. We do not consider that to be a valid argument in the circumstances of this case. A contract is construed against the party preparing it only when, upon consideration of the facts, the intent of the parties remains obscure: Hodgins v. American Mutual Liability Insurance Co., 261 F. Supp. 129 (E.D. Pa. 1966). Moreover, a rule of construction against the drafter is inappropriate where the contract results from the joint efforts of negotiators for both sides and counsel for one of the parties simply prepared the draft. See Spatz v. Nascone, 364 F. Supp. 967 (W.D. Pa. 1973). "Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose. [cases] It is only when such an inquiry fails to clarify the ambiguity that the rule of construction relied upon by the chancellor should be used to conclude the matter against that party responsible for the ambiguity,

the drafter of the document." Burns Manufacturing Co., Inc. v. Boehm, 467 Pa. 307, 313, fn. 3, 356 A.2d 763 (1976). The secondary rule of contract interpretation pursuant to which ambiguity is resolved against the drafter is applicable only when other rules of contract interpretation have failed to give the writing one definite meaning; among other rules to be considerd are the substantial intent of the parties entering into the agreement and what reasonable persons in the positions of the parties would have thought the agreement meant: District of Columbia Department of Housing and Community Development v. Pitts, 370 A.2d 1377 (D. C. Cir. 1977).

We have considered the other reasons assigned in support of the exceptions to the verdict and consider them to be without merit and requiring no discussion.

## ORDER

And now, July 5, 1977, for the reasons stated in the foregoing opinion, the exceptions filed by plaintiff to the verdict in favor of defendant are dismissed in their entirety and the prothonotary is directed to enter judgment in favor of defendant and give written notice by ordinary mail to the attorneys of record for the respective parties of the entry of the final judgment and this order of the court.