The Ringgold Education Association, Appellant
*v.* Ringgold School District, Appellee.

Argued December 6, 1979, before Judges CRUM-LISH, JR., MENCER and MACPHAIL, sitting as a panel of three.

Ronald N. Watzman, for appellant.

George B. Stegenga, for appellee.

OPINION BY JUDGE MACPHAIL, March 3, 1980:

On January 30, 1978, most of the teachers in the Ringgold School District (District) received notice pursuant to a preconceived plan adopted by the District that school had been canceled because of a severe snow storm. However, twenty-nine teachers reported for work as scheduled claiming that they received no notice of the cancellation. When the District refused to pay them for reporting, grievances were filed and an arbitrator appointed. After two hearings, the arbitrator found that sixteen of the twenty-nine grievants were entitled to a full day's pay for reporting on January 30.

The District appealed to the Court of Common Pleas of Washington County. That court found that the arbitrator's decision was rationally derived from the bargaining agreement entered into by The Ringgold Education Association (Appellant) and that his award should be upheld except that the sixteen teachers should be compensated only for the actual time they were at the school on January 30 at the rate of $8.00 per hour.

Appellant brought this appeal contending that the trial court had no authority to modify the arbitrator's award under the circumstances of this case.

Appellants contend that an arbitrator's award may be modified or corrected only where one of the four conditions exist as specified in Section 11 of the Act of April 25, 1927 (Act), P.L. 381, as amended, 5 P.S. §171.[1] It is apparent that the trial court in the instant case would have no statutory authority to modify the arbitrator's award unless the award was found to be

---

[1] Section 11 of the Act reads as follows:

In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:

"against the law," since the other three statutory conditions are clearly inapplicable to the facts of this case. Citing *Leechburg Area School District v. Leechburg Education Association*, 475 Pa. 413, 380 A.2d 1203 (1977), Appellant would have us hold that in order for an arbitration award to be against the law within the meaning of Section 11 of the Act, there must be a specific statutory prohibition against it. We disagree. In *Leechburg*, petitioners were attempting to *vacate* the arbitrator's award. Therefore, the Supreme Court decided the case on the basis of the provisions of Section 10 of the Act, 5 P.S. §170. The Court's comments with respect to the provisions of Section 11 were dicta. Surely there may be other reasons why an award may be against the law, *e.g.* decisional law.

Here, the trial court was aware of our decision in favor of the teachers in *South Allegheny School District v. South Allegheny Education Association*, 25 Pa. Commonwealth Ct. 282, 360 A.2d 829 (1976), aff'd per curiam 470 Pa. 214, 368 A.2d 270 (1977), but decided that the facts of that case distinguished it from the instant one. We disagree. In the *South Allegheny*

---

(a) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

(d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.

The court may modify and correct the award or resubmit the matter to the arbitrators.

case, the school district had a preconceived program for days when school was delayed or canceled due to the weather. Where the starting time was delayed, the teachers were required to report for work as close to the schedule time as possible without jeopardizing the teachers' welfare or safety. On February 12, 1975, there was a snow storm in the Pittsburgh area. At 6:06 A.M. it was announced on the radio that the school starting time would be delayed two hours. At 8:05 A.M. it was announced on the radio that school had been canceled for the entire day. Our Court upheld an arbitrator's award of a day's pay for those teachers who reported because they were not aware of the second announcement.

In the instant case, the District conceived an elaborate telephone system by which certain teachers would notify others of delays or cancellations of school due to weather conditions. On January 30, the superintendent first announced a one hour delay. When that announcement was made, according to the plan the teachers were to remain at home until 7:45 A.M. and if no word of cancellation was received by that time, they were to report to their jobs. Shortly after the delay was announced, the superintendent of schools decided to cancel the school day. The telephone notice plan was reactivated but the arbitrator found that sixteen of the teachers never received the second message.

In his opinion, the learned trial judge stated, "That case *(South Allegheny School District)* is clearly distinguishable. In this case, school was cancelled before the regular starting time according to a well devised plan." That is the only distinguishing factor specified by the trial court. Of course, in both cases, school was canceled before the regular starting time. In both cases, there was a plan of notification. The most that could be said is that the District's plan was more elaborate than the one employed by South Alle-

gheny School District. The issue, however, in both cases is whether teachers should be paid on a day they report for work because they received no notice of cancellation. The fact that the District here had a "well devised plan" is of no moment because the arbitrator found that at least as to sixteen teachers, the plan simply didn't work!

The District argues to us that there is another distinguishing factor, however, between the *South Allegheny* case and the case now before us. They point out that in *South Allegheny,* Judge ROGERS noted that "[i]t is unclear how long those who reported remained at the schools." 25 Pa. Commonwealth Ct. 285, 360 A.2d 830. In the instant case, the arbitrator and the trial court found that the teachers stayed anywhere from five minutes to an hour and a half. Appellant contends that in *South Allegheny* there would have been no way to determine the pay to which the teachers would be entitled on an hourly basis since no one knew how long they were there. They say in the instant case that time could be easily ascertained. In the first place, we must observe that there is nothing in the opinion in the *South Allegheny* case which could possibly be construed as holding that a day's pay was awarded there because it would be impractical or impossible to determine compensation on an hourly basis. Moreover, the provision for $8.00 per hour compensation directed by the trial court here is derived from Article VIII, Section A2[2] of the collective bargaining agreement. However, the clear meaning of

---

[2] A. *Working Day*

2. *Extra Pay for Extra Service*

If an employe agrees to report for duty earlier or stay later extending the length of his/her work day, as established above, he/she shall receive additional compensation at the rate of $8.00 per hour for the school year 1977-78 and $8.25 per hour for the school year 1978-79.

that subsection is that employees would be compensated at the rates specified where their regular work day was extended. Therefore, the trial court's use of that figure is unwarranted.

We hold that the decision in this case is clearly controlled by this Court's decision in *South Allegheny County School District v. South Allegheny Education Association, supra.* We conclude that there is no statutory basis for the trial court to modify the arbitrator's ward. Accordingly, we must reverse the trial court and reinstate that award.

### ORDER

AND Now, this 3rd day of March, 1980, the order of the Court of Common Pleas of Washington County, dated February 13, 1979, sustaining in part and modifying in part the arbitrator's award filed December 7, 1978 is reversed and the arbitrator's award is reinstated.

President Judge BOWMAN did not participate in the decision in this case.

Judge DISALLE did not participate in the decision in this case.