United Transportation Union, Local 1594 *v.*
Southeastern Pennsylvania Transportation Authority, Red Arrow Division. United Transportation Union, Local 1594, Appellant.

Argued December 9, 1976, before Judges KRAMER, WILKINSON, JR., and ROGERS, sitting as a panel of three.

*R. Thomas McLaughlin*, with him *Deasey, Scanlan & Bender, Ltd.*, for appellant.

*Richard S. Meyer*, with him *John F. Smith, III*, and *Dilworth, Paxson, Kalish & Levy*, for appellee.

OPINION BY JUDGE ROGERS, January 26, 1977:

The United Transportation Union, Local 1594 (Union), pursuant to Pa. R.J.A. No. 2101, has appealed from an award of arbitration made in a labor dispute between the Union and Southeastern Pennsylvania Transportation Authority (SEPTA) over the propriety of the discharge by SEPTA of one Anthony Ruger, a bus driver, for alleged substandard work.

The collective bargaining agreement provided a grievance procedure, the last step of which was "final and binding" arbitrators by a three person Board of Arbitrators, one each selected by the parties and the third selected under the rules of the American Arbitration Association. The arbitrators conducted extensive hearings, at the conclusion of which a majority decided that Mr. Ruger's discharge was unwarranted and that he should be reinstated but without reimbursement of any loss of earnings or other financial losses during the period between the date of the discharge, November 20, 1975, and of the award, May 14, 1976. The dissenting member of the Board, the Union's designee, believed that full back pay and other benefits should have been awarded.

The arbitration award written for the majority of the Board records apparent incidents of bad behavior on the part of Mr. Ruger memorialized by complaints of passengers or SEPTA supervisors, warnings is-

sued or suspensions imposed on or about the following dates: April 28, 1973, May 4, 1973, May 16, 1973, June 11, 1973, September 14, 1973, January 9, 1974, June 11, 1974, June 16, 1974, July 19, 1974, July 24, 1974, September 24, 1974, September 25, 1974, September 30, 1974, October 2, 1974, October 3, 1974, October 7, 1974, November 26, 1974, December 5, 1974, December 10, 1974, December 31, 1974, February 10, 1975, March 5, 1975, March 13, 1975, April 16, 1975, May 6, 1975, September 18, 1975, September 30, 1975, and November 7, 1975. Some of these complaints, warnings or suspensions related to the manner of Mr. Ruger's operation of buses; some were based on his asserted mistreatment of senior citizens entitled to ride free; some related to his being out of uniform and at least one to his smoking while operating a SEPTA bus. The incident which triggered Mr. Ruger's discharge occurred on November 1, 1975, when Mr. Ruger refused a request that he stop smoking while operating a bus chartered by the Delaware County Community College to transport its soccer team. The request was made by the team's coach. The version of this incident most favorable to Mr. Ruger is Mr. Ruger's account, to the effect that the coach asked if he would mind not smoking and that he told the coach that he would indeed mind not smoking and that he continued to do so.[1] The Board of Arbitrators concluded that the triggering incident warranted some disciplinary action and therefore justified its receipt into evidence of Mr. Ruger's employment record. However, the majority criticized SEPTA for "poor procedure in failing to notify [Ruger] in all cases of a complaint or charge that had

---

[1] The majority of the Board of Arbitrators concluded that SEPTA rules forbade its employes from smoking while operating buses, including charters. The Union does not take issue with this conclusion in the appeal to this Court.

been made against him," and found some incidents where the evidence of misconduct was "rather thin," conflicting and confusing. It found on the other hand that there were some incidents prior to the triggering event in which Mr. Ruger's conduct was improper, naming in this category, according to our count, nine deficiencies, including running ahead of schedule, missing runs, refusing to take assigned work in an emergency, engaging in a confrontation with a supervisor, being out of uniform, being unshaven and refusing overtime work.

We have adopted the Federal test for review of arbitrators' awards appealed under Pa. R.J.A. No. 2101.[2] *Teamsters Local Union No. 77 v. Pa. Turnpike Commission,* 17 Pa. Commonwealth Ct. 238, 331 A.2d 588 (1975). That test is that an arbitrator's award is legitimate if it draws its essence from the Collective Bargaining Agreement[3] under consideration; the award takes its essence from the agreement if the arbitrators' interpretation can in any rational way be derived from the agreement; and the award may be disturbed by a reviewing court only where there is a manifest disregard of the agreement.[4]

The Union first argues that the majority of the Board of Arbitrators should not have considered the triggering incident because charges based thereon were not filed as prescribed by Article 33(1) of the collective bargaining agreement which provides that "[d]isciplinary charges against an employe will be filed within ten (10) days of SEPTA's knowledge of the incident . . . ." As noted, the incident in question

---

[2] Pa. R.J.A. No. 2101 was rescinded by Pa. R.A.P. No. 5104, effective July 1, 1976. *See now,* Pa. R.A.P. No. 703.

[3] *United Steelworkers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593 (1960).

[4] *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3rd Cir. 1969).

happened on November 1, 1975. It appears that someone from Delaware County Community College telephoned to SEPTA concerning the incident on November 7, 1975. However, a written complaint from the College was not received until November 13, 1975. The charges based on this incident were filed on November 20, 1975. The Union says that the charges should have been filed within ten (10) days after November 7, 1975. The majority of the arbitrators interpreted Section 33(1) as requiring the filing of charges based on a complaint made by a member of the travelling public to be timely if filed within ten (10) days after receipt of a complaint in writing, although a complaint may have been made by telephone at an earlier time. They reasoned that only upon the receipt of a writing would SEPTA be able to support a charge based on a complaint by a member of the public. They further said, however, that it would construe Article 33(1) to require the filing of charges within ten (10) days of either oral or written complaint made by other SEPTA personnel. This interpretation seems to us to be sensible, practical, rational, and in no wise disregardful of the agreement.

The Union next complains that the majority of the arbitrators exceeded its power in not awarding back pay. Its position seems to be that the arbitrators had before them only the issue of the propriety of Mr. Ruger's discharge and that, having concluded that he should be reinstated, they were powerless to withhold back pay. This is clearly not the law. Arbitrators have broad powers in the fashioning of remedies. Justice Douglas in *United Steelworkers of America v. Enterprise Wheel and Car Corp., supra,* wrote:

When an arbitrator is commissioned to interpret and apply the collective bargaining

agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

363 U.S. at 597.

Further, in *Teamsters Local Union No. 77 v. Pennsylvania Turnpike Commission, supra,* the question posed and decided in the affirmative was that of whether arbitrators may deny back pay to a discharged employe whom they order to be reinstated.

The Union says, finally, that the majority of the arbitrators were biased in favor of SEPTA and against Mr. Ruger and that the award, insofar as it withheld back pay, was unjust, inequitable and unconscionable. The charge of bias is based upon the assertion that the arbitrators considered hearsay evidence and that they disregarded evidence favorable to Mr. Ruger. In *School District of the City of Allentown v. Allentown Education Association,* 23 Pa. Commonwealth Ct. 224, 351 A.2d 292 (1976), we held that an arbitrator's consideration of probative hearsay was no basis for setting aside an award. Furthermore, the rule in the Federal system, which we have adopted, is that,

[i]n an arbitration case a court cannot act as a legal screen to comb the record for technical errors in the receipt or rejection of evidence by arbitrators, who in most cases are laymen.

*Newark Stereotypers Union No. 874 v. Newark Morning Ledger Co.,* 397 F.2d 594, 599 (3rd Cir. 1968), and that reviewing judges:

must recognize—indeed, discipline ourselves to make certain that we are conscious of it always—that if the controversy is one for grievance machinery and for resolution by an arbitrator whose decision is expressly to be final and binding, there is every likelihood that that chosen umpire may well make errors both of fact and law—that is errors in the eyes of Judges now having a narrowly circumscribed function.

*Dallas Typographical Union No. 173 v. A. H. Belo Corp.*, 372 F.2d 577, 581 (5th Cir. 1967).

Nothing complained of by the Union with respect to the conduct of the hearing and the findings and conclusions of the majority arbitrators describes error so detrimental to the Union's or Mr. Ruger's rights that it may be said that they were deprived of a fair hearing.

We therefore dismiss the Union's appeal and affirm the award of arbitrators.

## ORDER

AND Now, this 26th day of January, 1977, it is ordered that the appeal of the United Transportation Union, Local 1594 be and it is dismissed and the award of arbitrators be and it is hereby affirmed.