**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE, LODGE NO. 5.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 5, 1998.

Decided Nov. 18, 1998.

Karen Elizabeth Rompala, Philadelphia, for appellant.

Thomas H. Kohn, Philadelphia, for appellee.

Before FRIEDMAN and FLAHERTY, JJ., and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

The City of Philadelphia (City) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) which denied its request that the trial court vacate the decision and award of an arbitrator that upheld the grievance of the Fraternal Order of Police, Lodge No. 5(FOP). We affirm.

This case involves Deputy Sheriffs and Deputy Sheriff's Officers employed by the Philadelphia Sheriff's Department. These employees guard many civil and criminal courtrooms housed in the Criminal Justice Center (CJC), transport prisoners, and provide security for the CJC. Specifically involved are those employees who have been scheduled to work Saturdays and Sundays since November 1995.

In effect during the time at issue was a collective bargaining agreement (CBA). The relevant clauses of the CBA are as follows:

Article XI(A) Work Week – The normal work week for employees covered by this contract shall be forty (40) hours, Monday through Friday, inclusive. Modification of the Monday through Friday schedule to adjust to changes in the hours of coverage required by the President Judge, or his or her equal, of any Court serviced by the Sheriff's Department shall occur after notification and discussion; any other change to the Monday through Friday schedule shall be bargainable.

Article XI(C) Overtime –

2. Employees in the bargaining unit shall be compensated at the rate of one and one-half (1–1/2) times their regular rate of pay for all hours worked on the first regularly scheduled day off.

3. Employees in the bargaining unit shall be compensated at the rate of two (2) times their regular rate of pay for all hours worked on the second regularly scheduled day off.

Article XXXV(A) The arbitrator shall have no right to amend, modify, ignore, add to, or subtract from the provisions of this agreement. . . .

Article XLII Regulations/Past Practice (Paragraph 3) – The FOP and the City shall take no action violative of or inconsistent with any provision of this agreement, or any policy, or practice governing working conditions of employees existing on the date of the execution of this agreement.

This controversy began when the new CJC opened. It contains judicial chambers and courtrooms and is located in downtown Philadelphia. Previously, many of the courts that are now located in the CJC were located in City Hall and the Philadelphia Police secured the building. The new CJC required twenty-four hour, seven day a week security. The Sheriff's Department became responsible for this security.

A schedule was agreed upon by the Sheriff and the Union representative, and twenty-one officers were assigned work weeks with three non-rotating eight hour, round-the-clock shifts extending through Saturday and Sunday. A verbal agreement was reached between the Sheriff and the Union representative that the normal Monday through Friday schedule would be altered, but the employees would be paid overtime for any work on Saturdays and Sundays. The evidence indicates that officers working shifts on Saturdays and Sundays were paid overtime from July 1995 to November 1995 in accordance with this verbal agreement. In November 1995, this payment of overtime for work on Saturdays and Sundays stopped and a grievance was filed by the FOP on November 28, 1995.

The arbitrator upheld the grievance stating that "the evidence convinces me that the City entered into an agreement in July 1995 to pay certain employees of the Sheriff's Department premium pay for weekend work associated with providing security for the newly constructed CJC. When the City stopped paying the overtime without bargaining the change, it violated this agreement as well as Sections XI(A); XI(C)(2) and (3); and XLII of the collective bargaining contract." The arbitrator ordered the City to cease and desist from implementing the unilateral changes made denying the overtime pay and ordered the City to make whole all affected officers by paying them the difference between the rates they had received and the rates specified in the CBA, for all hours worked on Saturdays and Sundays.

The City appealed the arbitrator's award to the trial court. The trial court affirmed the arbitrator's award and the City filed this appeal to our Court.

The issues raised in this appeal are whether the award of the arbitrator drew its essence from the collective bargaining agreement and whether the award was within the arbitrator's authority.

■ Our review of an arbitrator's award is limited under the Uniform Arbitration Act (UAA), 42 Pa.C.S. §7314(a)(1). In reviewing an award to determine whether the arbitrator has exceeded his powers under the provisions of the UAA we must look to whether the award draws its essence from the contract.

■ Under the "essence test" we are confined to determining whether the arbitrator's decision could rationally be derived from the collective bargaining agreement. An arbitrator's award is to be respected by the courts if it represents a reasonable interpretation of the labor agreement between the parties. "An arbitrator's factual determinations, like those of a jury, will not be disturbed if they are supported by the evidence." *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). Where the arbitrator's words exhibit an infidelity to the agreement, courts have no choice but to refuse enforcement of the award. Subsumed within the essence test standard of review is the requirement that the arbitrator's interpretation of the agreement cannot be manifestly unreasonable. *Southern Tioga Education Association v. Southern Tioga School District*, 668 A.2d 260 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 665, 676 A.2d 1203 (1996).

The City contends that the arbitrator's award did not draw its essence from the parties' CBA. Specifically the City argues that its modification of the Monday through Friday work schedule to include weekend work, without overtime pay, was within its authority under the CBA and that the arbitrator departed from the express terms of the CBA when reaching his decision.

A reading of the pertinent provisions of the CBA cited above reveals that the Sheriff's Department employees worked a Monday through Friday schedule for forty hours. This schedule could only be changed if required by the President Judge or his equal and would occur only after notification and discussion. Any other change to the Monday through Friday schedule shall be bargainable. The arbitrator found that there was notification and a discussion between the Sheriff and the Union representative and that they agreed that the employees would work Saturdays and Sundays, but would be paid overtime as required by the CBA. In fact, the employees were paid overtime until sometime in November 1995, when the City unilaterally stopped paying overtime for the Saturday and Sunday work. This unilateral change was not bargained for as required by Article XI(A) of the CBA and was in violation of Article XI(C) governing the payment for overtime work.

■ Based upon a reading of the CBA and the facts as found by the arbitrator, we agree that the arbitrator had the authority to conclude that the City should not have unilaterally stopped paying employees for overtime. Our appellate review does not require the arbitrator's decision and award to be based upon a reasonable interpretation of the CBA, but only that it is derived from the essence of the CBA. Here, the CBA calls for overtime pay and the parties agreed to overtime pay for the weekend work. Moreover, the City had actually paid the overtime pay for almost four months before unilaterally stopping the payment of overtime. Accordingly, we conclude that the award draws it essence from the CBA.

Next, the City argues that the relief ordered by the arbitrator was in error. The arbitrator's relief consisted of a "cease and desist" order to the City to stop implementing the unilateral changes made to the overtime payment agreement and to make whole those affected employees who worked Saturdays and Sundays but were not paid the overtime for those hours as agreed.

■ We have held numerous times and our Supreme Court has agreed that arbitra-

tors have broad powers in the fashioning of remedies. *See Pennsylvania State Education Association v. Appalachia Intermediate Unit 08,* 505 Pa. 1, 476 A.2d 360 (1984) and *United Transportation Union, Local 1594 v. SEPTA,* 28 Pa.Cmwlth. 323, 368 A.2d 834 (1977). Therefore, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. *American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO v. City of Reading,* 130 Pa.Cmwlth. 575, 568 A.2d 1352 (1990).

■ We conclude that the arbitrator here fashioned an appropriate remedy and did not exceed his authority in doing so. In July 1995 the City agreed to pay overtime to employees who worked on Saturdays and Sundays. In fact, the City did pay overtime for this work under the new schedule until sometime in November 1995 when it unilaterally ceased payment of overtime. We conclude that based upon the City's unilateral breach of the terms of the agreement to pay overtime for weekend work, the arbitrator's remedy ordering the City to stop the practice of nonpayment for weekend overtime work and to restore those payments to employees was derived from the essence of the CBA.

■ Last, the City argues that the arbitrator erred as a matter of law by ignoring evidence which indisputably established that the parties had no meeting of the minds on the issue of compensation for the security detail. This "legal" argument is a veiled attempt to attack the findings of fact of the arbitrator. We have held that courts are prohibited from second guessing the arbitrator's fact finding and contract interpretation as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority. *American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO,* 568 A.2d at 1352. Since we have concluded, as outlined above, that the arbitrator was arguably construing or applying the CBA and was acting within the scope of his authority, the City's argument concerning the arbitrator's findings of fact must fail.

Moreover, our appellate review of the record does not require ample evidence to support the arbitrator's findings in this case, but only a determination that the decision draws its essence from the CBA.

Accordingly, based upon the above analysis we affirm the order of the trial court upholding the arbitrator's award because the award draws its essence from the CBA and the arbitrator did not exceed his authority.

### ORDER

AND NOW, this 18th day of November, 1998, the order of the Court of Common Pleas of Philadelphia County at August Term 1997 No. 0012, dated September 8, 1997, is affirmed.