CITY OF PHILADELPHIA, Appellant

v.

**FRATERNAL ORDER OF POLICE LODGE NO. 5 (Jason Breary).**

Commonwealth Court of Pennsylvania.

Argued June 14, 2007.

Decided July 30, 2007.

Elise Bruhl, Philadelphia, for appellant.

Stephen J. Holroyd, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN JUBELIRER.

This is an appeal by the City of Philadelphia (City) from a grievance arbitration conducted pursuant to what is commonly referred to as Act 111,[1] in which the arbitrator found in favor of the Fraternal Order of Police Lodge No. 5(FOP). The City failed to respond to the arbitrator's subpoena that was issued at the request of the FOP, claiming that it had misplaced the subpoena and that it had not intentionally failed to respond. The arbitrator, in large measure based on instances in other, unrelated cases between the two parties in which the City had apparently failed to comply with FOP document disclosure requests, precluded the testimony of any witness who provided statements subject to the subpoena, which effectively precluded all the witnesses the City had intended to call from testifying. The City rested without presenting evidence, and the arbitrator found in favor of the FOP. The Court of Common Pleas of Philadelphia County (trial court) affirmed based on the narrow certiorari standard of *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 71, 656 A.2d 83, 85 (1995). In the present appeal City argues that, even under this narrow certiorari standard, this Court may review the case because the arbitrator committed due process violations, committed procedural irregularities, and improperly exer-

---

**1.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

cised his authority. The City also argues that, given these violations, this Court must reverse the trial court's affirmance of the arbitrator's award.

This case involves a male City police officer, Jason Breary (Breary), whom the City sought to terminate from employment, for cause, after he purportedly sexually assaulted a female City police officer.[2] The FOP grieved the dismissal. The grievance was held in abeyance pending criminal charges against Breary brought by the City District Attorney. Breary was convicted of indecent assault in Philadelphia Municipal Court. He appealed the conviction, and the trial court overturned the conviction. Subsequently, this case proceeded to arbitration.

A Notice of Hearing was issued on February 9, 2006, scheduling the arbitration hearing for July 10, 2006. On May 18, 2006, the arbitrator, at the FOP's request, issued a subpoena requiring the City to turn over, by July 10, 2006:

> Any and all documents relating to the discipline imposed upon ... Breary, including but not limited to, Forms 75–18, investigation reports, citizen complaints, witness statements, Notices of Disciplinary Action (Suspension, Intent to Dismiss, and Dismissal), documents reflecting actions taken by and recommendations made by the Police Board of Inquiry ("PBI"), transcripts or tape recordings of proceedings before the PBI, and all other documents that refer or relate in any way to the aforementioned discipline.

(Arbitrator's Opinion at 2.) There is no dispute that, as of the start of the hearing on July 10, 2006, the City had not turned over any documents to the FOP.[3]

As the arbitration hearing began on July 10, 2006, the FOP informed the arbitrator that the City had not complied with the subpoena request. The City had come to the hearing with eight witnesses which it intended to present on its side of the case.[4] The FOP requested sanctions from the arbitrator against the City for the City's non-compliance with the subpoena. The arbitrator rescheduled the hearing for July 25, 2006, and he "asked the City to come [on that date] with a—in the sense of a rule to show cause concerning any kind of sanctions regarding failure to comply with the subpoena." (Hr'g Tr., July 25, 2006(Tr.) at 3, Reproduced Record (R.R.) at 8a.) The arbitrator heard argument from both sides.

The FOP argued that it has 261 different cases with the City, most of them discipline cases and that, in each one, the City is in sole possession of the relevant evidence. The FOP argued that it is beholden to the City to provide this information and that, while the City has extensive periods of time to prepare for a case using this documentation, the FOP is without the benefit of this documentation and is unable

---

**2.** The factual circumstances surrounding the averred assault are set forth in pages 5 and 6 of the City's brief before this Court. The FOP argues that the factual averments contained in the brief are not facts of record and may not be considered. (FOP's Br. at 3, n. 1)

**3.** There is some dispute as to whether the FOP had followed up with the City regarding the subpoena. The FOP claims it sent an email, on or about May 27, 2006, to the Deputy City Solicitor, who served as the City's chief labor counsel; however, the Solicitor was not the trial counsel for the present case. The City argues that this email was not in the record before the arbitrator. The FOP claims that it submitted the email as an exhibit at the July 10, 2006 hearing, but that this hearing was not transcribed. This email is not in the record.

**4.** It is not entirely clear from the record the identity of the witnesses the City intended to call.

to prepare for the different cases until it receives this documentation. The FOP argued that "[o]ver the last six, eight months, we have been—we've attempted to amicably get the documents over the last several years with absolutely no result at all." (Tr. at 6, R.R. at 9a.)

The FOP argued that it has tried various methods to get the documentation, including contacting the Commissioner directly by letters, which have been unanswered, and pursuing unfair labor practice charges. The FOP argues that it has been its practice, prior to the present case, to send opposing counsel a letter, in lieu of a subpoena, requesting the necessary documentation, but that the City has responded in these cases by requiring the FOP to submit formal, legal subpoenas to obtain the documents. The FOP argues that it has heard "all the excuses" for why documentation has not been provided or not timely provided, and that the FOP has repeatedly indicated in these arbitration cases that it could not continue to tolerate the City's obstructionist practices. Counsel for the FOP noted that "in this case, to test the water, [he] filed a formal subpoena" as the City was requiring, but yet still received no response to it. (Tr. at 7, R.R. at 9a.)

The FOP argued that, given the holding in *Betancourt,* which dictates that the results of the arbitration will essentially and conclusively decide whether a grievant retains or loses his job, "it is absolutely and positively critical that the City comply with requests for documentation." (Tr. at 8, R.R. at 9a.)

In response, the City argued that it was not until the hearing, on July 10, 2006, that it learned of the subpoena. It noted that following the hearing, and after investigating what happened, it realized that it had timely received the subpoena notice, but that the notice had been misplaced and not

forwarded to the City's counsel who was handling the case. The City indicated that, when it realized what had occurred, it immediately complied with the subpoena and forwarded the documentation to the FOP. The City also indicated that there was a related case involving a different police officer for whom the FOP had also filed a grievance, and that, in that case, the City had already provided the same documentation that it had requested for the Breary arbitration case.

The City also argued that there is an intermediate step, the motion to enforce a subpoena, between the issuance of the subpoena and the imposition of a penalty, which affords the party receiving the subpoena an opportunity to comply before facing sanctions. Additionally, the City noted that, prior to the July 10th hearing date, it had engaged in settlement discussions with the FOP, and that the FOP could have raised the subpoena issue at these discussions, but failed to do so.

The City also argued, while acknowledging it unintentionally erred in not providing the documents, that the error was cured because the documents had been provided and that the FOP's counsel had, as of the July 25th hearing date, ample time to prepare its case. Alternatively, the City argued that the hearing date should be continued to afford the FOP's counsel adequate time to prepare.

After hearing argument, the arbitrator granted the FOP's motion to exclude all evidence subject to the subpoena, including the "testimony of any witness who provided statements subject to that subpoena." (Tr. at 34, R.R. at 16a). The arbitrator, in explaining his decision, reasoned that subpoenas "cannot be ignored, either intentionally or unintentionally [and that] compliance with such documents are critical to the due process" to which a grievant is entitled. (Tr. at 30–31, R.R. at 15a.) Re-

latedly, the arbitrator reasoned that it would be prejudicial and unfair to the grievant to delay resolution of his case. The arbitrator also noted that there was a significant number of pending cases (over 200) involving the two parties that would impede timely resolution of the grievant's case.

While acknowledging that this was an "extreme sanction," the arbitrator concluded that "[t]his relationship [between the two parties] clearly depends on compliance with what is [sic] basic requests for documents so that individual police officers who are subject to these charges can receive their full due process rights before an arbitrator." (Tr. at 34, R.R. at 16a.)

Based on this ruling, the City was precluded from presenting the testimony of the witnesses it had available. The City rested its case without presenting any evidence. Consequently, the arbitrator concluded that the City had failed to meet its burden and sustained the grievance. The arbitrator issued an award on October 2, 2006, reinstating Breary as a police officer with full back pay and benefits to the date of his termination.

The City filed a petition to vacate the arbitration award with the trial court, which denied the petition, finding that the arbitrator had not exceeded his authority. The City appeals to this Court.

■ Before us are, essentially, two main issues:[5] first, whether the issues presented are reviewable given the narrow certiorari standard; and, second, if they are reviewable, whether the arbitrator violated due process, committed procedural irregularities, or improperly exercised his authority which, within the narrow scope of review, requires reversal.[6]

The City argues that three aspects of the narrow certiorari standard should allow review of the arbitrator's decision: (1) the arbitrator violated the City's procedural due process rights; (2) the arbitrator exceeded his powers; and (3) the presence of procedural irregularities. .

---

**5.** The FOP frames the issues in the following manner: (1) "Whether, under the well-established narrow *certiorari* standard of review of arbitration decisions issued pursuant to Act 111, this Court may question the evidentiary rulings of the arbitrator and overturn an award based on those rulings?"; (2) "Whether the court below erred in affirming the decision and award of the arbitrator?"; and (3) "Whether the decision of the court below and the decision of the arbitrator should be affirmed?" (*See* FOP's Br. at 2.)

In its Designation of Reproduced Record & Statement of Issues Intended to be Presented for Review, the City identified the following issues: "1) the arbitrator acted outside the scope of his authority; 2) the arbitrator committed procedural irregularities; 3) the arbitrator violated the City's constitutional rights, including its due process rights, and; 4) the arbitrator improperly precluded the City from presenting any evidence in support of Breary's dismissal, where there was no showing of prejudice at that hearing."

**6.** Judicial review of an arbitration award arising under Act 111 is in the nature of narrow certiorari. *Betancourt*, 540 Pa. at 71, 656 A.2d at 85. Under this standard, a reviewing court is limited to questions regarding: "(1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights." *Id.* The standard of review to be applied is two-fold. As to the four questions encompassed by narrow certiorari, the Court's review is a plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts. *Town of McCandless v. McCandless Police Officers Association*, 587 Pa. 525, 540–41, 901 A.2d 991, 1001 (2006). Where the question depends on fact-finding or upon interpretation of the collective bargaining agreement, the Court is bound by the arbitrator's determination even if the arbitrator is wrong. *Id.* at 540, 901 A.2d at 1000.

As to the City's procedural due process rights, the City argues that the essence of due process is notice and an opportunity to be heard, and that the arbitrator denied the City that opportunity to be heard. The City also argues that due process is implicated because the arbitrator essentially awarded a punitive award based on averred past misdeeds of the City toward individuals who are not parties to this case. Moreover, the City argues that the arbitrator failed to consider all the necessary factors that must be considered before imposing a case-ending sanction for a discovery violation.[7]

The FOP argues that the issues presented in this appeal are not reviewable. The Pennsylvania Supreme Court has repeatedly held that the scope of review in a narrow certiorari standard may not be broadened, absent legislative action, and that the courts must exercise judicial restraint in reviewing Act 111 arbitration awards. *See Betancourt; see also McCandless; Pennsylvania State Police v. Pennsylvania State Troopers Association (Smith),* 559 Pa. 586, 741 A.2d 1248 (1999). FOP contends that the arbitrator simply interpreted the parties' collective bargaining agreement that required all discipline be only for just cause. Additionally, the arbitrator concluded that, implicit within this just cause requirement, was a due process standard that required the City to share, in a complete and timely manner, information and documentation that is within the City's exclusive possession and control. (*See* FOP's Br. at 24–25.) "The City does not deny that it failed to provide the subpoenaed documents. It therefore cannot deny that it violated the underlying contract." (FOP's Br. at 25.) The FOP argues that the arbitrator made a factual finding that the City willfully violated a lawful subpoena and, accordingly, used his discretion to impose what he determined to be an appropriate evidentiary sanction. The FOP contends that the decision is not subject to review,[8] because courts are required to show great deference to the arbitrator's remedial powers. (FOP's Br. at 19 (citing *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 720 A.2d 811, 814 (Pa.Cmwlth.1998).) The standard applicable here is whether the arbitrator

**7.** The City also argues that the arbitrator committed procedural irregularities by not complying with the American Arbitration Association (AAA) rules, which apply to Act 111 arbitrations, *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5 (Staff Inspector Appeal),* 564 Pa. 290, 298, 768 A.2d 291, 296 (2001), and which provide that the arbitrator "*shall* afford *full* and equal opportunity for all parties for the presentation of relevant proofs." AAA Rule 26 (emphasis added).

**8.** The FOP argues that the arbitrator "was not discussing Constitutional due process when he examined the facts of this matter" but, rather, was discussing the term due process as it is used in the arbitration realm. (FOP's Br. at 27.) In particular, the FOP argues that due process is a component of "just cause" and that it essentially relates to "the ability to mount a meaningful defense." (FOP's Br. at 27–28.) The FOP contends that, in this case, the arbitrator was essentially addressing a procedural issue, and not a legal one.

The FOP distinguishes between "substantive arbitrability" and "procedural arbitrability" and argues that this present case is more akin to the latter. (FOP's Br. at 28.) The FOP argues that "substantive arbitrability" relates to whether a matter is subject to arbitration, and is an issue left to the trial courts. In contrast, the FOP argues that "procedural arbitrability" involves procedural issues such as whether arbitration was timely invoked, which are left to the discretion of the arbitrator. (FOP's Br. at 28.) The FOP argues that, under the essence test, while an arbitrator's rulings may be reviewed to determine whether they substantially prejudiced an individual's rights, that same standard is not applicable here; rather, the arbitrator's determination as to what evidence to preclude is a procedural issue and is left to his deference. (FOP's Br. at 28.)

exceeded his powers by ordering an illegal act; mere errors of law are not enough. *City of Scranton v. E.B. Jermyn Lodge No. 2 of Fraternal Order of Police*, 903 A.2d 129, 135 (Pa.Cmwlth.2006), *petition for allowance of appeal denied*, 591 Pa. 717, 919 A.2d 959 (2007). FOP argues that, in this case, there was no illegal act so, given the scope of review, the arbitrator's ruling is proper.

 We conclude that the issues fall within the Court's narrow certiorari standard, and are subject to the Court's review.

> Where resolution of the issue turns on a pure question of law, or the application of law to undisputed facts, our review is plenary. However, where it depends upon fact-finding or upon interpretation of the collective bargaining agreement, we apply the extreme standard of deference applicable to Act 111 awards; that is, we are bound by the arbitrator's determination of these matters even though we may find them to be incorrect.

*Pennsylvania State Police v. Pennsylvania State Troopers Ass'n*, 840 A.2d 1059, 1062 (Pa.Cmwlth.2004).

Much of the FOP's argument, here, centers on the FOP's statement that the arbitrator found the City willfully failed to abide by the subpoena. The FOP argues that, given this finding, the arbitrator simply used his discretion to fashion an evidentiary penalty. The problem with this argument is that the arbitrator did *not* make that finding. In fact, the written decision does not expressly indicate that the City's action in this case was even intentional. The written decision references and incorporates the arbitrator's explanation for his decision, given on the record at the July 25, 2006 hearing. In his oral explanation, the arbitrator also does not expressly indicate that the City acted willfully. Rather, the arbitrator avoids this conclusion and, instead, frames his analysis as applying whether the City's noncompliance was "intentional[ ] or unintentional[ ]." (Tr. at 30, R.R. at 15a.) While any fact-finding that the arbitrator made would be beyond the purview of the Court, the arbitrator's decision seems grounded in law and not fact, i.e., whether it was a willful violation; thus, the fact-finding deference would not be applicable. Therefore, the issue that we are left with, at its core, is whether the law allows the arbitrator to effectively dismiss this case as a discovery sanction.[9] This issue raises due process concerns as properly set forth by the City: in particular, whether the City was given the opportunity to be heard, and, whether a penalty may be imposed for wrongs the City committed in other cases. These concerns fall within the narrow confines of the scope or review articulated in *Betancourt* and, thus, are appropriately before this Court for our review.

The City next argues that the arbitrator: committed due process violations; committed procedural irregularities; and improperly exercised his authority that, even given our Court's narrow scope of review, requires reversal. The City argues that the sanction power of a tribunal cannot be exercised in a manner that overrides the rights of the parties before it, citing to *Crawford v. Southeastern Pa. Transp. Auth.*, 774 A.2d 807, 810 (Pa.Cmwlth.2001). The City also argues that any instances of noncompliance in other cases cannot be

---

9. Although Act 111 arbitration cases do not provide for discovery in the formal sense, given the nature of the cases, and that the lion's share, if not the entirety, of the documentary evidence in the cases is within the exclusive control and possession of the governmental entity, the transfer of these documents to the FOP acts as de facto discovery.

used to provide notice to the City, in this case, of noncompliance, citing to *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 564 Pa. 290, 297 n. 3, 768 A.2d 291, 295 n. 3 (2001) (*Staff Inspector Appeal*). Similarly, the City claims it should not be punished in this case for wrongs committed to other grievants who are not parties to this case. The City notes that the United States Supreme Court has recently stated that the Due Process Clause of the Federal Constitution is implicated when a punitive damages award is based on harm to non-parties, and that "we can find no authority supporting the use of punitive damage awards for the purpose of punishing a defendant for harming others." *Philip Morris USA v. Williams,* —— U.S. ——, ——, 127 S.Ct. 1057, 1063, 166 L.Ed.2d 940 (2007). Additionally, the City contends that our own Pennsylvania Supreme Court has concluded that an arbitrator cannot impose a punitive award for harms experienced by non-parties. *City of Philadelphia Office of Housing and Community Development v. Amer. Fed'n of State, County and Mun. Employees, Local Union No.1971 (OHCD),* 583 Pa. 121, 876 A.2d 375 (2005).

█ The City also argues that the courts have held that a dismissal of a case for a discovery violation is a "severe sanc-

tion" that "should be imposed only in extreme circumstances." *Stewart v. Rossi,* 452 Pa.Super. 120, 681 A.2d 214, 217 (1996); *accord, Jetson Direct Mail Services, Inc. v. Dep't of Labor and Industry, State Workmen's Ins. Fund,* 782 A.2d 631, 633–34 (Pa.Cmwlth.2001). The City argues that various cases set forth a multi-factor analysis that must be used before a case can be dismissed as a sanction.[10] *Williams v. School District of Philadelphia,* 870 A.2d 414 (Pa.Cmwlth.2005); *Crawford,* 774 A.2d at 810. This multi-factor analysis, according to the City, requires the sanctioning body to look at the circumstances leading to the violation and following from the violation. In the present case, the City contends that the arbitrator imposed an absolute sanction without considering the circumstances.

The City argues that the particular circumstances of this case counsel against such a severe sanction: (1) it was an inadvertent mistake; (2) the mistake was immediately cured when the City learned of the violation; (3) FOP counsel had the opportunity to make City's counsel aware of the subpoena during settlement discussions, but did not do so; (4) FOP counsel had two weeks with the documents to prepare a case; and (5) there is no prejudice to Breary.[11]

---

**10.** When considering imposition of a sanction, the following factors must be weighed by the trial court prior to making its decision: (1) the nature and severity of the discovery violation; (2) the defaulting party's willfulness or bad faith; (3) prejudice to the opposing party; (4) the ability to cure the prejudice; and (5) the importance of the precluded evidence in light of the failure to comply. *Williams v. School District of Philadelphia,* 870 A.2d 414 (Pa.Cmwlth.2005) (adopting and incorporating these factors from *Thompson v. Houston,* 839 A.2d 389 (Pa.Super.2003) as the factors that a trial court should use to dismiss an action for failure to appear for a non-Act 111 arbitration hearing); *Crawford* (noting that Pa. R.C.P. No. 218 authorized

dismissal of non-Act 111 arbitration appeal for failure to appear at settlement conference, but concluding that the court must look at the same first four factors as set forth in *Williams*).

**11.** The argument to this last point is multi-faceted. First, the City argues that the arbitration, itself, had been held in abeyance for some time because of the then pending criminal charges against Breary—"[a]n extended period of self-imposed delay cannot be construed as prejudice." (City's Br. at 30.) Second, the City contends that this Court has previously rejected the contention that "a police officer's interest in avoiding arbitration

282

The City also argues that, per *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 104 Pa.Cmwlth. 187, 521 A.2d 517, 518 (1987), the proper means of seeking enforcement of an arbitration subpoena is by filing a motion with the applicable court of common pleas. Relying on *Browne v. Commonwealth*, 843 A.2d 429, 436 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 581 Pa. 681, 863 A.2d 1149 (2004), the City argues that a party cannot complain of error arising from lack of compliance with a subpoena if it has failed to try to enforce the subpoena. The arbitrator acknowledges that these subpoenas are not self-enforcing. (Tr. at 30; R.R. at 15a (stating that a party that "has a problem with the subpoena, can either come to the arbitrator to seek quashing of the subpoena or can, since these subpoenas are not self-enforcing, go to the Court of Common Pleas to seek to have them quashed.").)

In response, the FOP argues that the City created its own hardship and is now using that hardship as a defense for wrongdoing. (FOP's Br. at 20.) Additionally, the FOP argues that, while the excluded evidence "was clearly important, the City was not without options." (FOP's Br. at 12 n. 9; *see also* FOP's Br. at 22.) The arbitrator's ruling did not bar all evidence, but just barred "testimony of any witness who provided statements subject to that subpoena." (Tr. at 34, R.R. at 16a.) Thus, the City's case was not necessarily foreclosed by the arbitrator's ruling.

The FOP contends that the arbitrator was mindful of due process concerns for both parties and weighed the violation against the importance of the information to Breary, as well as the fact that the

evidence was exclusively in the hands of the City. The FOP argues that nothing in the rules of the American Arbitration Association limits an arbitrator's ability to make evidentiary rulings. It further argues that to allow these evidentiary rulings to face scrutiny, given the narrow certiorari scope of review, would essentially bypass that scope by opening every arbitration to a plenary and de novo review of an arbitrator's evidentiary findings.

The FOP argues that the City's argument also fails under the factors that must be considered "[w]hen evaluating whether to dismiss an action for discovery violations." (FOP's Br. at 30.) Breary suffered prejudice by not having this information in a timely manner. That the City apparently felt unable to present a case after this evidence was excluded "is further indication of the importance of the requested documents, and the prejudice suffered by the grievant" due to the City's non-disclosure of the information to him. (FOP's Br. at 26 n. 13.) Additionally, the backlog of cases between the City and the FOP prevented this case from being timely cured, which, according to the FOP, only further prejudices Breary who has already been prejudiced because four years had already passed since he had been discharged.

Finally, the FOP argues that the City's actions were not in good faith. The FOP argues that "it was the City's historic, systematic, and willful noncompliance with the subpoena which provided the primary basis for this ruling." (FOP's Br. at 26.) Given the City's repeated failure to comply with document requests in several other documented cases,[12] the FOP contends

delays outweighs 'the City's need to fully present its case to the arbitrator.' *See City of Philadelphia v. Fraternal Order of Police, Lodge No. 5 (Gniotek)*, 107 Pa.Cmwlth. 15, 18, 527 A.2d 621, 621 (1987)." (City's Br. at 30.)

12. For the "documentation" of these cases, FOP cites to its attorney's argument before the arbitrator in which he discussed several cases which, he avers, showed the City engag-

that it is clear the violation here was not a mere clerical error but, rather, that the City "simply *ignored* the subpoena as not being worthy of its attention." (FOP's Br. at 32.) The arbitrator found, "as a matter of fact, that the FOP and [Breary] were prejudiced by the City's failure to timely comply with the subpoena, and that the prejudice caused thereby could not be cured by rescheduling the hearing." (FOP's Br. at 33.) The FOP asserts that this Court is bound by that factual finding.

In addressing these arguments, we note that the cases cited by the City for their due process arguments are not completely on point. For instance, *OHCD* involved monetary damages that were specifically awarded to serve a punitive function. In this case, although Breary eventually received compensation in the award, that compensation was not given as a punitive measure. Instead, the punitive measure in this case was an evidentiary one which does not elicit the same concerns as *OHCD*. Nevertheless, the City has provided ample authority that raises concerns about the punitive measure taken by the arbitrator in this case.

■ Precedent supports the City's position that past wrongful conduct between parties to a collective bargaining agreement may not form a foundation for imposing penalties in a subsequent case involving a different grievant. The City's reliance on *Staff Inspector Appeal*, for the proposition that the City is not perennially on notice of an issue because the FOP has raised it in other Act 111 arbitrations, is compelling. In that case, the Pennsylvania Supreme Court held that:

> We also reject the notion that the City was somehow "on notice" that the out-of-class pay claim was at issue in this matter simply because the FOP had specifically raised such a claim in earlier demands for arbitration which were separate from and unconsolidated with the instant matter. *See* R.R. at 458a–468a (the FOP's grievance argued that a lieutenant performing Staff Inspector work was entitled to out-of-class pay); R.R. at 469a–476a (the FOP's grievance was that a sergeant who had been assigned to perform Staff Inspector work was entitled to out of class pay). The fact that the FOP made an out-of-class pay claim in similar, yet undeniably distinct, matters does not give rise to the presumption that this issue is for all times present in any other similar matter. It would be illogical to conclude that the City was somehow on notice not only as to those claims actually raised in the demand for arbitration, but also as to any other claims that the FOP has raised in the past.

*Staff Inspector Appeal*, 564 Pa. at 297 n. 3, 768 A.2d at 295 n. 3. Applied to the present case, while it is undisputed that the City received the subpoena, the arbitrator's decision does not find that the failure to abide by the subpoena, *in this case*, was intentional. Whatever intentional violations may have occurred *in other cases* are not relevant to the present dispute.

■ Focusing on the present dispute, the City also correctly points out that FOP failed to use appropriate means for enforcing the subpoena and is, essentially, bootstrapping an enforcement proceeding onto a merits arbitration hearing. Although Section 6 of Act 111 authorizes arbitrators to issue subpoenas, it does *not* give them authority to enforce them. 43 P.S. § 217.6 (providing that each Act 111 arbitrator "shall have the power to administer oaths and compel the attendance of witnesses and physical evidence by subpoena.")

ing in similar conduct. (Tr. at 9–12, R.R. at 10a.)

That authority lies with the courts of common pleas, and the City's reliance on *City of Philadelphia*, 521 A.2d at 518 and *Browne* is well placed.[13] Applied to the present case, the arbitrator's action seems to be an "end-around means" of enforcing a subpoena—it characterizes the request for relief as involving an evidentiary issue so as to bring it within the arbitrator's authority, when, in fact, it is an enforcement action that lies outside the arbitrator's authority. This creates a procedural irregularity.[14]

■ We have noted that "[a]rbitration panels must conduct their proceedings in accordance with the mandates of due process," and that "[t]he essential elements of due process are notice and the opportunity to be heard in a full and fair hearing before an impartial decisionmaker." *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 725 A.2d 206, 210 (Pa. Cmwlth.1999) (stating in this Act 195 case that, "[f]or purposes of the due process clause, however, there is no basis to distinguish between appeals under Act 111 and those under Act 195.") We believe, in this case, that the City was inappropriately denied this opportunity for a full hearing.

Although the cases cited by the City setting forth the factors that a tribunal must consider in imposing a discovery sanction do not involve Act 111 arbitration, where, as here, the sanction denies a party's day in court (or before the arbitrator), these principles should apply, or at least provide a useful analytical tool for evaluation. In this case, it appears that application of most of these factors—(1) the defaulting party's willfulness or bad faith; (2) prejudice to the opposing party; (3) the ability to cure the prejudice; and (4) the importance of the precluded evidence in light of the failure to comply—counsels against the sanction. The FOP arguments about the importance of the documents are well placed and, consequently, the City's failure to provide them in a timely manner is significant. However, the arbitrator did not make a finding of bad faith but, rather, seemed to suggest that the mistake was unintentional. Additionally, while the

13. While the *City of Philadelphia* case does not specifically state that the proper or only means of obtaining enforcement of a subpoena is through petition to the applicable common pleas court, the facts do indicate that that is the method used by the City to seek compliance with a subpoena. The case involved the City trying to compel a witness subpoenaed for an arbitration proceeding to testify when the witness refused to take the stand by claiming the protections of the Fifth Amendment to the United States Constitution.

Additionally, the *Browne* case, although not involving an arbitration, holds that a party that has sought a subpoena has a responsibility to seek enforcement of it if it is not complied with. *Id.*, 843 A.2d at 436 (holding that "we can discern no duty on the part of the trial court to sua sponte seek to enforce a subpoena.") Under *Browne*, failure to seek enforcement of a subpoena with the appropriate enforcing authority waives any subsequent argument related to a party's non-compliance with the subpoena.

14. It appears also that another means of relief available to the FOP was to pursue unfair labor practice claims against the City with the Pennsylvania Labor Relations Board (PLRB). In its answer to the City's petition to vacate filed with the trial court, the FOP attached as exhibits several proposed decisions and orders of a hearing examiner from the PLRB. We have previously concluded that government bodies have a duty to provide information in arbitration cases and have affirmed rulings that failure to provide such information constituted an unfair labor practice. *Commonwealth v. Pennsylvania Labor Relations Bd.*, 107 Pa.Cmwlth. 132, 527 A.2d 1097, 1100 (1987). Similarly, in the cases attached to the FOP's answer to the City's petition to vacate, the hearing examiner found the City to be committing unfair labor practices and directed the City to comply with information requests. The conduct at issue in these PLRB cases does not provide a basis for penalty in this case.

FOP was prejudiced by not receiving the information and, thus, not able to prepare its defense, the prejudice was easily curable, and had, in fact, been cured. Following the initial hearing, the City timely provided the documents that were subject to the subpoena. The FOP had several weeks to review this evidence to prepare for the second hearing that the arbitrator had conducted. It must be noted that this actually afforded the FOP more time to prepare with the documents than it may have had, even under the terms of the subpoena. The subpoena only required that the documents be provided prior to the July 10th hearing. Thus, the City could have provided these documents the day before the hearing, and still have been in compliance with the subpoena.[15] In light of the factors, the absolute preclusion of evidence associated with or derived from these documents is quite excessive, particularly when it has the effect of eliminating the punished party's case.

The FOP places great weight on the prejudice to Breary. In response, the City contends that this Court has previously rejected the contention that "a police officer's interest in avoiding arbitration delays outweighs 'the City's need to fully present its case to the arbitrator.' See City of Philadelphia v. Fraternal Order of Police, Lodge No. 5 (Gniotek), 107 Pa.Cmwlth. 15, 18, 527 A.2d 621, 621 (1987)." (City's Br. at 30.)[16]

Although the Gniotek case is factually distinguishable from the present case, it stands for a principle that appears applicable to the present case—that a grievant's due process rights were sufficiently protected by the arbitration process which, if successful, would lead to his reinstatement, such that a delay in the case to allow the City to fully present its case did not prejudice the grievant. In Gniotek, the City sought to hold open the record in an arbitration case, when a key witness for its case declined to testify before the arbitrator, claiming Fifth Amendment protections. The City petitioned the trial court for an order directing the witness to testify, and the City asked the arbitrator to keep the record open pending the trial court's resolution of the issue. The trial court found in favor of the City, and directed the witness to testify, but the witness continued to decline to do so. The arbitrator closed the record without receiving the testimony of the witness, and decided the arbitration in favor of the FOP. On appeal, the trial court affirmed the arbitrator's decision. This Court reversed the trial court's decision and remanded the case. There, the FOP had argued that "Gniotek's due process right to a timely post-termination hearing would be impinged by the delay between his discharge and any future arbitration hearings, and argues that such concerns outweigh the City's need to fully present its case." Gniotek, 527 A.2d at 622. This Court disagreed with the FOP's argument and held there is "no basis for compelling reinstatement merely because of delay attributable to the administrative appeals process" and that "Gniotek's due process rights were more than amply protected by the post-termination hearings and the prospect of reinstatement should the City fail to prevail in demonstrating just cause for his dismissal." Id.

15. While such a practice may raise ethical or professional civility concerns, we note this only to show that the prejudice in this case was readily curable, and that the cure afforded the FOP ample time to prepare its case.

16. The FOP questions the continued vitality of this case following Betancourt. However, it is not entirely clear how the two are in conflict, and the FOP offers no meaningful discussion as to how the two may be in conflict.

In contrast to this case, the City's inability to present its full case in *Gniotek* was not as a result of its own action but, rather, because of the recalcitrant witness. Nonetheless, the *Gniotek* case does emphasize the importance of allowing each side to present its case, and minimizes the significance that a delay has on the grievant's due process rights in an arbitration proceeding. This latter principle seems particularly compelling in the present case, in which a significant period of delay in resolving the grievance was caused by grievant's request for a stay to allow his criminal case to be resolved.[17]

It is troubling that a full hearing was not given in this case, in large measure, because of violations that have occurred in *other* cases. Whatever the circumstances of those cases, the arbitrator himself seems to recognize that, in this case, the error was unintentional. The cases dealing with discovery sanctions, although not exactly on point, all counsel towards *not* dismissing a case or eliminating a party's relevant evidence based on an unintentional error that is timely cured. This seems particularly true where, as here, the prejudice to grievant does not seem particularly great, given the delay of his case caused by his parallel criminal case.

While *Betancourt* and its progeny preclude our reversal of an arbitrator's decision even for a mistake of law, a discovery sanction, imposed for violations in other cases and without consideration of the facts and circumstances of this particular case, does not comport with Constitutional due process by which arbitrators appointed under Act 111 must abide. This is particularly true given that the proper procedure for enforcing subpoenas issued by an Act 111 arbitrator lies with the applicable court of common pleas, and not with the arbitrator.

For these reasons, the trial court's decision is vacated and this matter remanded for the trial court to remand to the arbitrator to conduct a hearing in which the City is allowed to present its full case.

### *ORDER*

**NOW,** July 30, 2007, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby **VACATED,** and this matter **REMANDED** to the Court of Common Pleas of Philadelphia County, with directions to vacate the arbitrator's award and to remand the matter to the arbitrator to conduct a hearing in which Appellant is allowed to present its full case.

Jurisdiction relinquished.

---

17. Additionally, given the nature of the criminal case, in which Breary had at least initially been convicted, and in which, undoubtedly, there was factual development likely using the same witnesses and documents that were precluded in this case, there is serious doubt as to the actual surprise and prejudice suffered by Breary in this case, which may be why FOP counsel never requested the documents from the City during their settlement discussions. Nonetheless, for purposes of this appeal, we will disregard any factual development that may have occurred in the criminal matter.