IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Collier Township Police Association,   :
                                 :
                    Appellant    :
                                 :
               v.            :  No. 483 C.D. 2023
                                 :  Argued:  February 6, 2024
Collier Township               :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                           FILED:  March 6, 2024


Collier Township Police Association (Union) appeals the order of the Allegheny County Court of Common Pleas (trial court) dismissing the Union's Petition to Review/Vacate Arbitration Award (Petition) and entering judgment in favor of Collier Township (Township).[1] We affirm.

Officer Robert Spencer (Employee) was hired by the Township on February 19, 2019. On November 30, 2021, Officer David Brown, another longtime

---

[1] The Union is the collective bargaining representative for the officers in the Township's Police Department (Department) pursuant to the Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§217.1-217.12 (Act 111). In addition, we note that the Township is a Township of the First Class. *See* 126 The Pennsylvania Manual 6-114 (2023); *Emert v. Larami Corporation*, 200 A.2d 901, 902 n.1 (Pa. 1964) ("Courts will take judicial notice of geographical facts such as the county in which a town or city is located.") (citations omitted).

Township officer on active duty, died while off-duty. At the request of Officer Brown's family, Chief Craig Campbell (Chief) arranged for the Township's officers to provide ceremonial honors at Officer Brown's funeral.[2] The ceremonial honors included all members of the Township's Police Department (Department) entering the 2:00 p.m. viewing service at the funeral home on December 5, 2021, in a formalized procession in dress uniforms, and then Casket Duty for the duration of the viewing period. Casket Duty involved two officers standing at the foot and the

[2] Article VIII, Section 16 of the parties' Collective Bargaining Agreement (CBA), entitled "Management Rights," states, in pertinent part:

> The [Township] reserves all rights and powers conferred upon it by the Constitutions and laws of the Commonwealth of Pennsylvania and of the United States, except as expressly limited by a specific provision of this [CBA]. It is understood and agreed that the [Township], at its sound discretion, shall have and retain, solely and exclusively, in accordance with applicable laws, all managerial responsibilities including, but not limited to, the right to manage all operations; to determine the mission, . . . policies, programs and functions, standards of service, and organizational structure of the [Township]; . . . to establish, change, combine or abolish . . . the job content of any classification; . . . to determine the number and types of employees required and to assign work to such employees in accordance with the operation[al] needs of the [Township], and direct the workforce. Matters of inherent managerial policy are reserved exclusively to the [Township].

Reproduced Record (RR) at 429a-30a. To this end, the Departmental Standard of Conduct in Order No. 16-1, 3.34.1 states, in relevant part:

> A member . . . of the [Department] shall work such hours and perform such duties as may be prescribed by the [Chief] in accordance with the [CBA]. Members . . . , although assigned to a particular shift and pass days, etc., may be assigned anywhere with the [Department] where their services may be needed on an emergency basis.

*Id.* at 497a.

head of Officer Brown's casket. The Chief intended for every Township officer to participate in Casket Duty, rotating the officers in at 15-minute intervals. *See* Reproduced Record (RR) at 30a.

At that time, the Department had a COVID-19 masking policy in effect that required officers who were not fully vaccinated to wear a mask at all times while in uniform or while working as an officer. There were four officers in the Department who were not vaccinated, including Employee.

On December 2, 2021, the Chief sent an e-mail to the entire Department explaining the plan for the viewing and instructing that "[a]ll officers are expected to attend the viewing and the funeral," "[i]f anyone is unable to attend, please let me know asap," and that "[i]f anyone has any questions or problems please contact Sergeant Lamb asap." RR at 32a. On December 3, 2021, Sergeant Lamb had a conversation with several officers, including Employee, indicating that the Chief had purchased plain black surgical masks for the unvaccinated officers to wear for the viewing and funeral so that all would match while in their dress uniforms. Employee reacted with disbelief, exclaiming, "Are you f[***]ing kidding me?" then stating "I'm not doing it. This is ridiculous." *Id.* at 135a. Employee continued that the Chief would have no recourse if he failed to wear his mask because "I'm part of the funeral." *Id.* at 136a. Sergeant Lamb advised the Chief that there might be an issue with the officers wearing masks, which prompted the Chief to send a follow-up e-mail on December 3, 2021, to the Department as "a reminder that officers who are not fully vaccinated are required to wear a mask at all times for the viewing and the funeral." *Id.* at 32a.

Sergeant Robert Ferrance learned of Employee's objections to the Chief's plan for the viewing and funeral and sought out Employee to personally

encourage him to follow the Chief's directives. Sergeant Ferrance testified that he "was pleading with" Employee to follow the Chief's directives "because [he] knew that there was going to be ramifications if [Employee] didn't." RR at 123a. Ultimately, Employee did not attend the 2:00 p.m. viewing with the other officers, but he did attend the 6:00 p.m. viewing in civilian clothes and without a mask. Employee attended the funeral, and wore a mask for most of the service, but removed it toward the end and did not wear a mask during the graveside portion of the funeral. *See id.* at 33a.

The Chief considered Employee's actions to be insubordinate and directed Sergeants Lamb and Ferrance to investigate Employee's failure to participate in the viewing and services as directed by him. On December 9, 2021, the Sergeants interviewed Employee and issued a report to the Chief. On December 16, 2021, a Disciplinary Action Report (DAR) was issued recommending to the Township's Board of Supervisors (Board) that Employee's employment be terminated[3] based on his deliberate and intentional disobedience of the Chief's

---

[3] Section 644(a)(2) and (4) of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, added by the Act of May 27, 1949, P.L. 1955, 53 P.S. §55644(a)(2) and (4) states, in relevant part:

> (a) An individual employed in a police . . . force of a township may not be suspended without pay, removed or demoted except for the following reasons:
>
> * * *
>
> (2) Neglect or violation of any official duty.
>
> * * *
>
> (4) Inefficiency, neglect, intemperance, disobedience of orders or conduct unbecoming an officer.

directives regarding participation in the viewing and funeral services. *See* RR at 342a-43a.[4] The Township provided Employee with the DAR and held a *Loudermill*[5] hearing on December 20, 2021. The Board voted to terminate Employee's

---

[4] Specifically, the DAR asserted that Employee violated the following Departmental Standards of Conduct (DSOC): (1) Order No. 16-1, 3.1 (obedience to orders and laws); (2) Order No. 16-1, 3.4 (members to read and understand all written directives); (3) Order No. 16-1, 3.6 (conduct unbecoming an officer or employee); (4) Order No. 16-1, 3.8 (conduct toward superior officers and other employees); (4) Order No. 16-1, 3.9 (insubordination); (5) Order No. 16-1, 3.13 (neglect of duty); and (6) Order No. 16-2, 2.0 (lawful orders). *See* RR at 342a-43a. In turn, in relevant part, Order No. 16-1, 3.1.1 states: "All members and employees of the [Department] must obey and enforce . . . all lawful written or verbal orders of a supervisor." *Id.* at 493a; *see also id.* at 494a, Order No. 16-1, 3.3.1 ("Members . . . shall not escape liability for a violation of any . . . order . . . by pleading ignorance or that they thought it did not apply to them."). Order No. 16-1, 3.4.1 states: "It will be the duty and responsibility of every member . . . to read and understand all . . . orders . . . .". *Id.* DSOC 16-1, 3.4.2 states: "If in doubt as to the meaning, content or application of any . . . order, . . . they will consult their immediate supervisor or the [Chief] for an explanation." *Id.* Order No. 16-1, 3.6.3 states: "Conduct unbecoming a member . . . of the [Department] is any conduct which adversely affects the morale, effectiveness or efficiency of the [Department] . . . ." *Id.* Order No. 16-1, 3.8.1 states: "Proper respect to superior officers will be rendered at all times. The use of indecent, profane, . . . insolent or uncivil language is prohibited." *Id.* Order No. 16-1, 3.9.2 states: "A member . . . shall be considered insubordinate when [he] is unwilling to submit to authority, will not follow orders, is willfully disobedient, or uses disrespectful, mutinous, insolent or abusive language . . . toward a supervisor." *Id.* at 495a. Order No. 16-1, 3.13.2 states, in relevant part: A member will be considered in neglect of duty when [he] fails to give suitable attention to the performance of duty or fails to perform the duties prescribed in [Department] . . . orders . . . ." *Id.* Order No. 16-1, 3.14.1 states: A member . . . will promptly and sincerely cooperate with other members . . . of the [Department] in the performance of duties . . . which will enable the objectives of the [Department] to be accomplished." *Id.* Order No. 16-1, 2.1 states: "Members shall promptly obey and execute any and all lawful orders of a supervisor. This shall include orders relayed from a supervisor by a member of the same or lesser rank." *Id.* at 502a. Finally, Order No. 16-2, 4.1.l states: "The member shall respectfully inform the issuing officer of an order's illegality." *Id.* at 503a.

[5] Referring to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), which requires that a union member be given notice and an opportunity to respond to any charges leveled against him in a formal hearing before being terminated.

5

employment, and he was notified of his termination on December 29, 2021. *See id.* at 33a-34a, 209a-10a.[6]

On January 5, 2022, Employee filed a grievance against the Township based on his discharge. *See* RR at 444a-45a. On January 10, 2022, a Step One

---

[6] Specifically, the termination letter stated the following, in relevant part:

> As more fully set forth in the Statement of Charges, the Board has determined that you knowingly and intentionally disobeyed direct orders of [the Chief] that officers who are not vaccinated against COVID-19 wear a face mask at the December 5 viewing and December 6 funeral of a deceased member of the [Department], and also, that you wear your departmental dress uniform at the December 5 viewing.
>
> To knowingly disregard the orders of a superior officer is conduct which is wholly incompatible with the requirements of a police department, in which adherence to the paramilitary structure is required and respect for the chain of command is paramount. The Township cannot tolerate direct disobedience and insubordination of this nature and the Board has therefore determined that your conduct on December 5 and December 6, whether considered together or individually, warrants your termination from employment. The Board's conclusion in this regard is supported by your employment record, including the fact that you were recently counseled regarding your obligations to treat [the Chief] in a professional manner, as well as your failure to acknowledge any wrongdoing or apologize to [the Chief] at your December 20, 2021 *Loudermill* meeting. While your open disregard of [the Chief's] directives on December 5 and December 6 are alone and individually unacceptable and egregious enough to support your discharge, these additional facts further support the conclusion that you are either unable or unwilling to conduct yourself in accordance with the heightened standards of conduct and expectations placed upon you as a law enforcement officer. The Township cannot accept conduct which undermines the good order and effectiveness of the [Department].

RR at 209a-10a.

meeting was held and the grievance was denied.[7]  On February 7, 2022, a Step Two meeting was held, and the grievance was also denied.  Employee requested a Step Three meeting, but the Board declined to conduct the public hearing.  As a result, on March 24, 2022, Employee then appealed the matter to the Arbitrator.  *See id.* at 450a.

The Arbitrator conducted hearings on August 23, 2022, and September 7, 2022.[8]  Ultimately, on November 16, 2022, the Arbitrator issued an Opinion and Award denying Employee's grievance.  *See* RR at 24a-63a.  The Union then filed a petition to vacate the Award in the trial court, and then filed the instant timely appeal of the trial court's order dismissing its petition.[9]

---

[7] In relevant part, the Chief's Memorandum #22-05 states, in pertinent part:

> At the meeting you were invited to provide any information which you wished to provide in support of the grievance or to identify any mistakes or misstatements of fact contained in the Statement of Charges which formed the basis for your discharge.  However, you declined to provide any information whatsoever at the meeting despite several invitations and opportunities to do so.  Because you opted to provide no information at the meeting, there is no basis upon which to conclude that any fact determined, or conclusion reached regarding your discharge was in error.  Therefore, your grievance is denied.

RR at 446a.

[8] In his post-hearing brief, Employee asserted that the Chief's orders with respect to the viewing and funeral were "illegal because [they] deprived [Employee] and all of the [Township] police officers their right to pray, grieve, mourn, and participate in Officer Brown's viewing and funeral as private citizens."  RR at 272a-73a.

[9] In Act 111 cases, our review is limited to "narrow certiorari," which allows inquiry only into: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his powers; or (4) the deprivation of constitutional rights.  *Pennsylvania State*
**(Footnote continued on next page…)**

7

On appeal, Employee claims that the trial court: (1) improperly failed to apply the plenary and non-deferential standard of review to the Arbitrator's award;[10] (2) erred in failing to rule that Employee's due process rights were violated by the Arbitrator's failure to determine whether the Chief's order for funeral duty was illegal; (3) erred in failing to rule that a public employee is not required to respond, acknowledge wrongdoing, and apologize at his *Loudermill* hearing; and (4) erred in failing to rule that the Township's failure to give notice and the opportunity to be heard on the actual reason for Employee's termination violates his due process rights under *Loudermill*.[11]

---

*Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83, 90 (Pa. 1995). If an award cannot be vacated on one of these bases, then it must be upheld. *Id.*

[10] Specifically, Employee asserts that the narrow certiorari standard as enunciated in *Betancourt* does not apply, and that the less deferential plenary standard used in *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 932 A.2d 274, 278 n.6 (Pa. Cmwlth. 2007), applies herein.

[11] Finally, the Township seeks the award of attorneys' fees and costs under Pa.R.A.P. 2744 based on Employee's purported dilatory and vexatious conduct in pursuing this meritless appeal. Pa.R.A.P. 2744 states:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
>
> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% per annum in addition to legal interest,
>
> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

**(Footnote continued on next page…)**

8

However, after reviewing the Original Record, Employee's appellate brief, and the relevant case law, we conclude that the foregoing appellate issues have been ably resolved in the thorough and well-reasoned opinion of the Honorable Alan Hertzberg.  Accordingly, we affirm the trial court's Order on the basis of his Opinion in the matter of *Collier Township Police Association v. Collier Township* (C.P. Allegheny, No. GD-22-015325, filed July 6, 2023).

MICHAEL H. WOJCIK, Judge

However, as this Court has explained:

> The imposition of counsel fees is solely within the discretion of the court.  In determining the propriety of such an award, the court is "ever guided by the principle that an appeal is not frivolous simply because it lacks merit.  Rather, it must be found that the appeal has no basis in law or fact."  Such a high standard is imposed "in order to avoid discouraging litigants from bringing appeals for fear of being wrongfully sanctioned."

*Canal Side Care Manor, LLC v. Pennsylvania Human Relations Commission*, 30 A.3d 568, 576 (Pa. Cmwlth. 2011) (citations omitted).

Upon review of the relevant considerations, we exercise our discretion and decline to award costs and attorneys' fees in this case.  Ultimately, the instant matter flows from the trial court's refusal to disturb the Arbitrator's Award, and we are the first appellate court asked to review the trial court's actions in this regard.  Although we have determined that the claims raised in this appeal are without merit, we do not believe that the instant appeal meets the high standard outlined above to support an award of costs and attorneys' fees.  *See, e.g.*, *Department of Transportation, Bureau of Motor Vehicles v. Kosak*, 639 A.2d 1252, 1257 (Pa. Cmwlth. 1994) ("Further costs, by way of requiring the car dealer to reimburse the [D]epartment [of Transportation] for legal costs, will not be imposed because the car dealer's attempt to evade this court's final order, although not well founded in law, does not appear to be contumacious.").  Accordingly, based on the foregoing, the Township's request is denied.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Collier Township Police Association,   :
    :
                    Appellant   :
    :
          v.   :  No. 483 C.D. 2023
    :
Collier Township   :

# **O R D E R**

AND NOW, this 6th day of March, 2024, the order of the Allegheny County Court of Common Pleas is AFFIRMED; Collier Township's request for the award of costs and attorneys' fees is DENIED.

_____
MICHAEL H. WOJCIK, Judge

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

COLLIER TOWNSHIP POLICE
ASSOCIATION,

                                                 GD 22-15325

      Petitioner,                          483 CD 2023

      v.

COLLIER TOWNSHIP,

      Respondent.

## OPINION

**Judge: Alan Hertzberg**                   **Date Filed: July 6, 2023**

      This Opinion supports my April 25, 3023 Order of Court, which dismissed Collier Township Police Association's Petition to Review/Vacate Arbitration Award. Petitioner, the collective bargaining unit or "Union" for Police officers in Collier Township, filed a grievance on behalf of Robert Spencer, who was a full-time police officer in Collier Township. Officer Spencer was hired on February 19, 2019. In November of 2021, Officer David Brown, a longtime officer of the Collier Township Police Department died while off-duty. At the request of his family, the Chief of the Collier Township Police Department ("Chief Campbell") arranged for the Collier Township Police Department to provide ceremonial honors at Officer Brown's funeral. These ceremonial honors included all members of the Collier Township Police Department entering the 2:00 pm viewing service in a formalized procession attired in their dress uniforms and then commencing Casket Duty for the duration of the viewing period. Casket Duty involved

two officers in dress uniform standing at the foot and head of Officer Brown's casket. Chief Campbell intended for every officer to participate in Casket Duty, rotating through the officers at 15 minute intervals. (R.R. p. 7).

By way of background, in November of 2021 and at the time of Officer Brown's viewing on December 5, 2021 and funeral on December 6, 2021, the Collier Township Police Department had a COVID 19 masking policy in effect, which required officers who were not fully vaccinated to wear a mask at all times while in uniform or while in their role as a police officer. On December 2, 2021 Chief Campbell sent an email to the entire Police Department explaining the plan for the viewing and included the instructions that "if anyone is unable to attend, please let me know asap," and that "If anyone has any questions or problems please contact Sergeant Lamb asap." (R.R. pp. 7-8). On December 3, 2021, Officer Lamb had a conversation with several officers, including Officer Spencer, indicating that Chief Campbell had purchased plain, black surgical masks for unvaccinated officers to wear for the viewing and funeral services so that everyone would match while in their dress uniforms. Officer Spencer reacted with disbelief, exclaiming "Are you fucking kidding me" then stating "I'm not doing it. This is ridiculous." (R.R. 85a). Officer Spencer went on to argue that the Chief would have no recourse if he failed to wear his mask because "I'm part of the funeral." (R.R. 86a). Officer Lamb advised Chief Campbell that there might be an issue with wearing masks to the services, prompting Chief Campbell to send a follow up email on December 3, 2021 advising "...a reminder that officers who are not fully vaccinated are required to wear a mask at all times for the viewing and funeral." (R.R. p. 8).

Sergeant Robert Ferrance learned of Officer Spencer's objections to Chief Campbell's plan for the viewing and funeral, and sought out Officer Spencer to personally encourage him to follow the Chief's directives. Officer Ferrance testified that "I was pleading with him to do that [wear the mask] because I knew that there was going to be ramifications if he didn't...I wanted him to understand that, you know, if you choose to go against Chief Campbell's order, he is nobody to mess around with from my personal experience." (R.R. 73a-74a). Ultimately, Officer Spencer did not attend the 2 pm viewing with the other officers, but attended the 6 pm viewing in civilian clothes and without a mask. Officer Spencer attended the funeral, and wore a mask for most of the service but removed it toward the end of the service and did not wear a mask at all during the graveside portion of the funeral. (R.R. p. 9).

Chief Campbell considered Officer Spencer's actions to be insubordinate and directed Sergeants Lamb and Ferrance to investigate Officer Spencer's failure to participate in the viewing and funeral services as directed by Chief Campbell. On December 9, 2021 the Sergeants interviewed Officer Spencer and issued a report to Chief Campbell. Chief Campbell determined that Officer Spencer deliberately and intentionally disobeyed his directives about participation in the viewing and funeral services and recommended Officer Spencer's termination to the Township Supervisors. The Township provided Officer Spencer with a Statement of Charges and held a Loudermill hearing on December 20, 2021. The Township Board of Supervisors voted to terminate Officer Spencer's employment and he was notified of his termination on December 29, 2021. (R.R. pp. 9-10).

3

The Union, on behalf of Officer Spencer, filed a grievance on January 5, 2022. The parties held a Step One grievance meeting on January 14, 2022, which was denied. They held a Step Two grievance meeting on February 7, 2022, which was also denied. Officer Spencer requested a Step Three grievance meeting, but the Township declined to participate. The Union and Officer Spencer appealed the matter to Arbitration. (R.R. p. 10). An arbitration hearing on Officer Spencer's grievance was held before Arbitrator Ronald Talarico, Esq. on August 23, 2022. Arbitrator Talarico denied Officer Spencer's grievance on November 16, 2022. On December 12, 2022 the Union filed a Petition to Review/Vacate Arbitration Award with the Court of Common Pleas of Allegheny County. I ordered the parties to file briefs and held oral argument on the matter on April 24, 2023. On April 25, 2023 I dismissed the Petition and entered judgment in favor of the Township. This appeal followed and in a timely filed Statement of Issues Complained of on Appeal, the Union alleges that I erred in six ways, which I will address in this Opinion.

Officer Spencer first alleges that I erred by "failing to rule that Petitioner's due process rights were violated when the Arbitrator effectively dismissed the case by refusing to hear or adjudicate the core issue of the case: whether Chief Campbell's Dec. 2, 2021 Order calling all Collier Township police officers to duty for the viewings and funeral of Officer David Brown was lawful ...." It is well established that Act 111 arbitration awards are subject only to a narrow certiorari scope of review and thus a reviewing court can only review questions of 1) the jurisdiction of the arbitrators; 2) the regularity of the proceedings; 3) an excess of the arbitrator's powers; and 4) deprivation of constitutional rights. Pennsylvania State Police v. Pennsylvania State Troopers

4

Association, 540 Pa. 66, 71, 656 A.2d 83, 86 (1995). This standard of review in Act 111 arbitration cases is colloquially known as "Bettancourt." Due process is a constitutional right that would fall into the fourth prong of Bettancourt. "The essential elements of due process are notice and the opportunity to be heard in a full and fair hearing before an impartial decisionmaker." Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia 725 A.2d 206, 210 (Pa.Cmwlth.1999). While it is true that the arbitrator determined that "the question of whether Chief Campbell could order all officers to participate in the formal Casket Duty ceremonies is simply not before me," (R.R. p. 35a) Officer Spencer has unilaterally framed that as the "core issue" of the case. However, Officer Spencer was not terminated for his failure to participate in Casket Duty. Officer Spencer was terminated for his failure to appear in his formal dress uniform during his attendance at the viewing service for Officer Brown, and for his failure to wear a mask during his attendance at the viewing service and funeral of Officer Brown (R.R. 199a). With regard to the violations for which Officer Spencer was terminated, a full hearing was held before the arbitrator where Officer Spencer had the opportunity to present his case and be represented by counsel. Following the hearing on those issues, the arbitrator specifically ruled that "... in reliance on the managerial prerogatives set forth in ... the collective bargaining agreement ... it must be concluded that Chief Campbell had the authority to order that officers attending the funeral services for Officer Brown do so in full dress uniform and in compliance with the departmental masking policy." (R.R. 36a). Officer Spencer attempts to rely on City of Philadelphia v. Fraternal Order of Police Lodge No.5 604 Pa. 267, (2009) or "Breary" in support of this allegation of error. However, in Breary, an arbitrator refused to hear any evidence related to an issue because of a

5

discovery violation, thus "effectively dismissing" it. That case is inapt here. Therefore, the arbitrator adjudicated exactly the "core issue" in the case, there was no due process violation and I committed no error.

Officer Spencer next alleges that I erred "in failing to rule that a public employee is not required to respond, acknowledge wrongdoing, or apologize at its Loudermill hearing and, therefore, may not be disciplined for failing to ...." Presumably, Officer Spencer assumes that he was punished for his failure to participate in the Loudermill hearing because it is referenced in his termination letter; however, the letter is clear that "your open disregard of Chief Campell's directives on December 5 and December 6 are alone and individually unacceptable and egregious enough to support your discharge ...." (R.R. 199a-200a). Indeed, the arbitrator found that "the Union's claim that Officer Spencer was independently disciplined for his decision not to respond during his Loudermill hearing is unsupported by the record" (R.R. 39a). Where an arbitrator's award depends on fact-finding, as here, "extreme deference" is applicable to the award and we are bound by the arbitrator's findings. See Pennsylvania State Police v. Pennsylvania State Troopers Association, 840 A.2d 1050, 1062 (Pa.Cmwlth. 2004). Therefore, I committed no error by upholding the arbitrator's award.

Officer Spencer next alleges that I erred "in failing to rule that a public employer's failure to give notice of and opportunity to be heard on the actual reasons for termination violates the public employee's due process rights ...." Officer Spencer was given notice of the reasons for his termination in the statement of charges provided to him in the Notice of Termination provided to him on December 29, 2021 (R.R. 199a) and the arbitrator found that "the claim that Officer Spencer was never on notice of any

6

disciplinary action...is rejected." (R.R. 40a). Officer Spencer was provided an opportunity to be heard at his Loudermill hearing and at arbitration where he was represented by counsel who presented evidence and examined witnesses before an impartial arbitrator. Therefore, Officer Spencer's due process rights were not violated, and I committed no error by upholding the arbitration award.

Officer Spencer next alleges that I erred "in failing to rule Petitioner's Petition to Vacate may not be dismissed for failure to submit evidence (a) never produced by Respondent, (b) Petitioner did not agree to include but instead requested production thereof, and (c) Respondent declined to submit on its own." It is unclear where Officer Spencer gleaned that his failure to offer certain types of evidence served as a basis for my ruling, but this is not the case and I committed no error by upholding the arbitrator's award.

Officer Spencer next alleges that I erred "in failing to apply the narrow certiorari scope of review to the instant Act 111 grievance arbitration award and rule the fourth prong of deprivation of constitutional rights was implicated." As discussed above, Officer Spencer was provided notice and the opportunity to be heard and therefore, his constitutional rights were not violated and I committed no error.

Finally, Officer Spencer alleges that I erred "in failing to apply the plenary and non-deferential standard of review when resolution of the issues presented turns on an application of law to undisputed facts, as required under Pennsylvania law." This case turns on the finding of facts on the issues related to Officer Spencer's insubordination, and the interpretation of the collective bargaining agreement with regard to Chief

7

Campbell's authority to issue orders related to Officer Brown's funeral services.

Therefore, the "extreme deference" standard was appropriate, and I committed no error.

BY THE COURT:

_Alan Hepberg_